UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN MILLIRON,

                Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE;
CENTRAL INTELLIGENCE AGENCY;
FEDERAL BUREAU OF INVESTIGATION;
OFFICE OF THE DIRECTOR OF
NATIONAL INTELLIGENCE,

                Defendants.

_____/

Case No. 1:23-cv-30

Hon. Jane M. Beckering
U.S. District Judge

Hon. Sally J. Berens
U.S. Magistrate Judge

**MEMORANDUM IN SUPPORT OF DEFENDANT FEDERAL BUREAU
OF INVESTIGATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

*Pro se* Plaintiff Ryan Milliron has sought various records under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA") from Defendant Federal Bureau of Investigation ("FBI").  Plaintiff's FOIA requests seek information related to the FBI's alleged "contacts with individuals who helped assert purported collusion between Trump and Russia relating to the 2016 election."  (Compl., ECF No. 1, PageID.2, ¶ 8.)  The FBI provided final responses to Plaintiff for Request Nos. 1558747-000 and 1561520-000, which Plaintiff now seeks to challenge.  Because the information Plaintiff seeks in these requests is exempt from disclosure under 5 U.S.C. § 552(b), the FBI is entitled to partial summary judgment pursuant to Federal Rule of Civil Procedure 56.[1]

**BACKGROUND**

Request No. 1558747-000.  The FBI received a FOIA request from Plaintiff dated August 28, 2022.  (*See* Declaration of Michael G. Seidel, dated February 15, 2024 (hereinafter "Seidel Declaration") (attached hereto as Exhibit 1), ¶ 5, Ex. A.)  Plaintiff's FOIA request asserts that Manos Antonakakis and David Dagon were "involve[d] in attribution for the [Democratic National Convention ("DNC")] hack" to Russia and requests "any reports, emails, memorandums, or letters in the FBI's possession relating to the hack of the DNC or Guccifer 2.0[2] that were provided by" Antonakakis or Dagon.  (*Id.*)  The FBI assigned it Request No. 1558747-000 for tracking purposes and acknowledged receipt via letter dated September 6, 2022.  (*Id.* at ¶ 6, Ex. B.)  On October 3,

---

[1] The FBI moves for partial summary judgment because it is still processing the other FOIA request referenced in Plaintiff's Complaint.  Specifically, the FBI is waiting for third-party consults for Request No. 1548976-000, (Compl., ECF No. 1, PageID.5, ¶¶ 26-28).

[2] In July 2018, the Department of Justice acknowledged the indictment of twelve Russian nationals who engaged in a sustained effort to hack into the computer networks of the DNC and released the information they obtained via the hack on the internet under the pseudonym "Guccifer 2.0."  (Ex. 1, Seidel Decl. ¶ 10.)

2023, the FBI denied Plaintiff's request by issuing a *Glomar*[3] response.  (*Id*. at ¶ 8, Ex. C.)
Specifically, the FBI notified Plaintiff that it would neither confirm nor deny the existence of
records responsive to his request, pursuant to FOIA Exemptions 6 and 7(C), because merely
acknowledging the existence of FBI records could reasonably be expected to constitute an
unwarranted invasion of Antonakakis and Dagon's personal privacy interests.  (*Id*.)

Request No. 1561520-000.  The FBI received a FOIA request from Plaintiff, dated
September 17, 2022.  (*Id*. at ¶ 19, Ex. D.)  The request seeks "any referrals, 302's, 1023's, or other
reports documenting information obtained from Igor Danchenko as a confidential human source
for the FBI," as well as documentation of payments made to Danchenko as a confidential human
source ("CHS").  (*Id*.)   The FBI assigned it Request No. 1561520-000 and acknowledged receipt
via letter dated October 17, 2022.  (*Id*. at ¶ 20, Ex. E.)  On March 10, 2023, the FBI notified
Plaintiff that the material requested is categorically exempt from disclosure pursuant to FOIA
Exemptions 6 and 7(C)-(F).  (*Id*. at ¶ 22, Ex. F.)

On January 9, 2023—after Plaintiff submitted these FOIA requests, but before Plaintiff
had received final responses from the FBI—Plaintiff filed this lawsuit.  (Compl., ECF No. 1,
PageID.1.)  The Complaint requested in part that the Court: (1) order the FBI to search for and
produce records responsive to Plaintiff's FOIA requests, and (2) enjoin the FBI from withholding
responsive, non-exempt records.  (*Id*. at PageID.8.)  Having received final responses for the FOIA

---

[3] The phrase *"Glomar"* stems from a case in which a FOIA request sought information from the
Central Intelligence Agency ("CIA") concerning a ship named the "*Hughes Glomar Explorer,"*
and the CIA refused to confirm or deny its relationship with the *Glomar* vessel because to do so
would compromise the national security or divulge intelligence sources and methods.  *Phillippi v.
CIA*, 655 F.2d 1325 (D.C. Cir. 1981).

requests referenced above, Plaintiff now seeks to challenge the FBI's withholdings, and the parties

agreed to resolve the dispute via summary judgment briefing.  (ECF No. 33, PageID.184.)[4]

## LEGAL STANDARD

Summary judgment is the procedural vehicle by which most FOIA actions are resolved. *See, e.g., Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001) ("[D]istrict courts typically dispose of FOIA cases on summary judgment . . . ."); *Am. Civil Liberties Union of Michigan v. FBI*, 734 F.3d 460, 465 (6th Cir. 2013) ("Most FOIA cases are decided on summary judgment, since the primary question is a legal one: whether the withheld documents are covered by one of the statutory exemptions.")  Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Under the FOIA, the court conducts a de novo review to determine whether the government properly withheld records under any of the FOIA's nine statutory exemptions.  *See* 5 U.S.C. § 552(a)(4)(B).  Because the FOIA's main objective is disclosure, courts are to "narrowly construe[]" these exemptions.  *ACLU*, 734 F.3d at 465.  The government bears the burden of proving that its withholdings under the FOIA are lawful.  *Norwood v. Fed. Aviation Admin.*, 993 F.2d 570, 573 (6th Cir. 1993).  "To prevail on summary judgment, the government must show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information' and that any withholding of materials was authorized within a statutory exemption." *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012)

---

[4] The parties anticipated that the summary judgment briefing would also address FOIA Request No. 2022-00400, directed to the Office of the Director of National Intelligence ("ODNI"). However, ODNI recently rescinded its final response and is conducting a search for the records requested.  Consequently, that request is not addressed in this brief.

(quoting *CareToLive v. Food and Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011)).  It may do so through submission of a detailed declaration or affidavit[5] that "fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position."  *Rugiero*, 257 F.3d at 544 (internal citations omitted).  The agency declaration is entitled to a presumption of good faith, absent evidence to the contrary.  *Id.* at 545.

## ARGUMENT

### I.      The FBI properly responded to Request No. 1558747-000.

The FBI properly responded to Request No. 1558747-000, which seeks documents "relating to the hack of the DNC or Guccifer 2.0 that were provided [to the FBI] by David Dagon or Manos Antonakakis," by issuing a *Glomar* response pursuant to FOIA Exemptions 6 and 7(C). 5 U.S.C. § 552(b)(6), (b)(7)(C).  (Seidel Decl. ¶¶ 5, 8, Ex. A.)

### A.      Plaintiff's request seeks documents that are protected from disclosure by Exemptions 6 and 7(C).

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The requirement of files "similar" to personnel or medical files has been read broadly by the Supreme Court to encompass any "information which applies to a particular individual."  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).  The Supreme Court considered this broad construction of "similar files" to be necessary in light of Congress's primary purpose in enacting Exemption 6, which was "to protect individuals from the injury and

---

[5] These declarations or affidavits are often referred to as a *Vaughn* index, after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  There is no set formula for a *Vaughn* index.  *See Kay v. FCC*, 976 F. Supp. 23, 35 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998) ("[I]t is well established that the critical elements of the *Vaughn* Index lie in its function, and not its form.").

embarrassment that can result from the unnecessary disclosure of personal information." *Id.* at 599.  In evaluating Exemption 6 withholdings, a court must balance the subject individual's right to privacy against the public's interest in disclosure.  *See U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (citing *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 776 (1989).  The only relevant public interest is "the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] significantly to public understanding *of the operations or activities of the government*." *Id.* (quotation and citation omitted).  A plaintiff bears the burden of demonstrating that disclosure of identifying information would serve a qualifying public interest.  *Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62, 66 (2d Cir. 2008) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes," to the extent that production "could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . ." 5 U.S.C. § 552(b)(7)(C).  To determine whether Exemption 7(C) protects against disclosure, courts require that agencies engage in a four-step analysis similar to the Exemption 6 analysis.  First, the agency must determine whether the documents at issue were compiled for law enforcement purposes.  *Rimmer*, 700 F.3d at 256. Second, the agency must determine whether there is a privacy interest in the requested information. *Id.* at 256-57.  Third, the agency must evaluate whether the requester has asserted a significant public interest in disclosure.  *Id.*  Fourth, the agency must engage in a balancing process to determine whether the public interest that would be served by disclosure outweighs the privacy interest in nondisclosure.  *Id.*; *Rugiero*, 257 F.3d at 552.

Exemption 7(C) "allows an agency to withhold a broader range of information than Exemption 6." *Rimmer*, 700 F.3d at 256 ("Exemption 6 require[s] that the invasion of privacy be 'clearly unwarranted,' [while] the adverb 'clearly' is omitted from Exemption 7(C), [and] Exemption 6 . . . refers to disclosures that 'would constitute' an invasion of privacy, [while] Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion.") (citation omitted).  Consequently, where an agency bases its withholding on both Exemption 6 and 7(C), courts frequently analyze the withholdings under the more protective terms of 7(C).  *Id*.  As such, this brief combines the analysis for Exemptions 6 and 7(C).

     i. *Plaintiff requests documents that were compiled for law enforcement purposes.*

Exemption 7(C) withholdings have a threshold requirement that the documents at issue be compiled for law enforcement purposes.  *Rimmer*, 700 F.3d at 256; *Jones v. FBI*, 41 F.3d 238, 245 (6th Cir. 1994).  The Sixth Circuit "has adopted a per se rule under which any documents compiled by a law enforcement agency fall within the first part of the section 552(b)(7)." *Rugiero*, 257 F.3d at 550.  *See also Jones,* 41 F.3d at 245-46 (explaining that a "per se rule comports more fully with the policies Congress enacted in FOIA" and "concern about overbroad withholding should . . . be addressed by proper scrutiny of the claimed exemptions").  It has also observed that "the FBI is the archetypical federal law enforcement agency."  *Jones*, 41 F.3d at 246.

The FBI is "the primary investigative agency of the federal government."  (Seidel Decl. ¶ 9.)  It has the "authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and to further the foreign intelligence objectives of the United States."  (*Id*.)  Therefore, under Sixth Circuit law, the documents the FBI prepares per se meet the Exemption 7(C) threshold, including those Plaintiff

seeks here.  Moreover, the records Plaintiff requested relate to an FBI investigation and qualify on that ground as well.  Plaintiff seeks records provided to the FBI by Manos Antonakakis or David Dagon "relating to the hack of the DNC or Guccifer 2.0."  (*Id*. at ¶ 5, Ex. A.)  The FBI properly determined that "if any such records exist, [it] would have been collected and maintained by the FBI as part of . . . its law enforcement mission"—specifically, as part of its investigation of the hack of the Democratic National Convention.  (*Id*. at ¶ 10.)  Thus, the requested information readily meets the threshold requirement for Exemption 7.

       *ii.*    *Plaintiff requests documents that implicate the privacy interests of third parties.*

Exemption 7(C) protects "the strong interest of individuals . . . in not being associated unwarrantedly with alleged criminal activity."  *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (internal quotations omitted).  Individuals investigated for criminal activity, as well as third parties such as witnesses, informants, and investigators who are mentioned in a law enforcement file, have a valid privacy interest because "[d]isclosure of such information could subject a person to embarrassment, harassment and even physical danger."  *Kiraly v. FBI*, 728 F.2d 273, 277 (6th Cir. 1984); *Rimmer*, 700 F.3d at 257.  Thus, courts have held that individuals who provide information to law enforcement authorities have protectable privacy interests in their anonymity pursuant to Exemption 7(C).  *Jones*, 41 F.3d at 246-47 (protecting informants' identities); *Fitzgibbon*, 911 F.2d at 767 ("persons involved in FBI investigations—even if they are not the subject of the investigation—have a substantial interest in seeing that their participation remains secret.") (quotation and citation omitted).  The fact that the requester might be able to figure out the individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish the privacy interests at stake.  *Fitzgibbon*, 911 F.2d at 768 (that CIA or FBI may have released information about individual elsewhere does not diminish individual's

8

"substantial privacy interests"); *Carpenter v. U.S. Dep't of Justice*, 470 F.3d 434, 440 (1st Cir. 2006) (finding that privacy interest of subject is not terminated even if his identity as an informant could arguably be determined from another source).

Here, the FBI issued a *Glomar* response to protect the privacy interests of the third parties named in Plaintiff's FOIA Request—Manos Antonakakis and David Dagon.  (Seidel Decl. ¶ 17.) If the FBI were to state that responsive documents exist, it "would officially confirm these individuals' associations with FBI criminal investigation(s)."  (*Id.*)  Such "[o]fficial confirmation could reasonably be expected to draw negative and unwanted attention to these individuals; could subject them to harassing inquiries, and otherwise stigmatize and adversely affect them."  (*Id.*) Consequently, Manos Antonakakis and David Dagon have substantial privacy interest in the requested records.

> iii.   *Plaintiff has not identified a significant public interest in disclosure of requested documents.*

To justify an invasion of privacy, a requester must show: (1) "that the public interest sought to be advanced is a significant one[,]" and (2) that "the information is likely to advance that interest."  *Favish*, 541 U.S. at 158, 172; *Rimmer*, 700 F.3d at 257-58.  The only relevant public interest in this analysis is that of "shed[ding] light on an agency's performance of its statutory duties."  *Reporters Comm.*, 489 U.S. at 773.  Where the public interest alleged relates to exposing agency misconduct, "more than bare allegations of federal malfeasance are required before the public interest becomes significant enough to overcome the privacy concerns embodied in Exemption 7(C)."  *Rimmer*, 700 F.3d at 258 (citing *Favish*, 541 U.S. at 172).  Even where a significant public interest is established, the second prong of the standard is not typically satisfied when law enforcement information pertaining to third party individuals is sought.  *Fitzgibbon*, 911 F.2d at 768.  *See also Albuquerque Publ'g Co. v. U.S. Dep't of Justice*, 726 F. Supp. 851, 855-56

(D.D.C. 1989) (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation).

Here, Plaintiff has not articulated a public interest in the disclosure of this material.  (Seidel Decl. ¶¶ 16-18.)  In Plaintiff's FOIA request, he asserts that Manos Antonakakis and David Dagon are "both individuals implicated in fraudulent data alleging a secret Alfa Bank communications channel" and were "involve[ed] in attribution for the DNC hack." (*Id*. at ¶ 5, Ex. A.)  Neither of these assertions identify a valid FOIA public interest or explain how the requested information would "shed light" on the FBI's performance of its statutory duties.  *Reporters Comm.*, 489 U.S. at 773.  Plaintiff's Complaint likewise fails to articulate a public interest in the requested information.  Therefore, the FBI properly concluded that "Plaintiff has not articulated a significant public interest in disclosure . . . ."  (Seidel Decl. ¶ 18.)

> ### iv.   *Third-party privacy interests outweigh any public interest in disclosure.*

If there is no public interest in disclosure, courts have held that the agency's analysis may end there.  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1494 (D.C. Cir. 1993) (where a request implicates no public interest, court need not linger over the balance; "something . . . outweighs nothing every time.") (citation omitted); *Cole v. FBI*, No. 13-cv-01205, 2015 WL 4622917, at *3 (D.D.C. July 31, 2015) ("The Court . . . need not reach the step of balancing private and public interests because [plaintiff] has not provided sufficient evidence of any public interest to be balanced.").  Here, because Plaintiff has not articulated a significant public interest in the information sought by his FOIA request, the FBI properly concluded that the substantial privacy interests of Antonakakis and Dagon outweighed the unidentified public interest in disclosure. (Seidel Decl. ¶ 17.)

**B.      A *Glomar* response is appropriate here.**

A *Glomar* response is permitted under Exemption 7(C) where acknowledging the existence of such records would itself jeopardize the privacy interests that it is intended to protect.  *See Antonelli v. FBI*, 721 F.2d 615, 617 (7th Cir. 1983).  For example, acknowledging the existence of records that would reveal that named individuals were investigated "go[es] to the heart of the privacy interest that Exemption 7(C) was designed to protect."  *People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535, 541 (D.C. Cir. 2014) (quotation omitted).  Courts have found a *Glomar* response particularly appropriate when an agency is responding to targeted requests for documents regarding alleged government informants, subjects of investigations, or individuals who may be mentioned in law enforcement records.  *See, e.g., Butler v. DEA*, No. 05-1798, 2006 WL 398653, at \*3-4 (D.D.C. Feb. 16, 2006) (*Glomar* response appropriate where request sought records pertaining to alleged DEA informants because "[i]in cases involving personal data on private citizens in law enforcement records, the privacy interest . . . is at its apex.") (quotation omitted); *Lindsey v. FBI*, 490 F. Supp. 3d 1, 17-20 (D.D.C. 2020) (*Glomar* response appropriate given potential subject's strong privacy interest in not being associated with FBI investigative records).

Plaintiff's request here is a targeted request for documents and information provided to the FBI by specific, named individuals—Manos Antonakakis and David Dagon.  If the FBI were to acknowledge the existence of such records, it would associate these individuals with an FBI investigation, which "would trigger harm under FOIA Exemptions (b)(6) and (b)(7)(C)," and undermine the very purpose of the exemptions.  (Seidel Decl. ¶ 12.)  Therefore, a *Glomar* response was warranted here.

## II.    The FBI properly responded to Request No. 1561520-000.

FBI properly responded to Request No. 1561520-000, which sought "reports documenting information obtained from Igor Danchenko as a confidential human source for the FBI," as well as documentation of payments made to Danchenko as a confidential human source, by issuing a categorical denial pursuant to FOIA Exemptions 7(D)-(F).[6]  5 U.S.C. § 552(b)(7)(D)-(F).  (Seidel Decl. ¶¶ 19, 22, Ex. D.)

### A.    The FBI conducted a reasonable search for records responsive to Plaintiff's request.

When responding to a FOIA request, "an agency must make a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information." *Rugiero*, 257 F.3d at 547.  An agency has the burden of establishing the adequacy of its search, and may do so with declarations that describe, in reasonable detail, the scope of the search.  *Id*.  The issue is not whether additional responsive documents might possibly exist, but whether the search was reasonable.  *Id*.

The FBI's searches were reasonably calculated to uncover records responsive to Plaintiff's request.   The attached Declaration of Michael G. Seidel, Section Chief of the FBI's Record/Information Dissemination Section (RIDS), Information Management Division (IMD), details the particulars of these searches.  (Seidel Decl. ¶¶ 1, 23-35.)  In his role as Section Chief of RIDS, Seidel supervises over 300 individuals who are responsible for responding to requests for access to FBI records and information pursuant to the FOIA.  (*Id*. at ¶ 2.)  His Declaration notes that the FBI maintains a centralized automated record system—the Central Record System, or

---

[6] The FBI is no longer categorically withholding the responsive records pursuant to Exemptions 6 and 7(C).  (Seidel Decl. ¶ 22, fn. 5).  However, Exemptions 6 and 7(C) apply to the records as underlying exemptions.  (*Id*.)  On January 5, 2024, the parties conferred and agreed to initially brief only the issue of the categorical exemptions to Request No. 1561520-000.  If Plaintiff prevails, then the FBI would process the responsive documents for additional FOIA exemptions.

CRS—which was searched in response to Plaintiff's request.  (*Id*. at ¶¶ 24-31.)   The FBI also conducted a targeted search in Delta, the FBI's official electronic record-keeping system for confidential human source ("CHS") management, which houses all CHS records.  (*Id*. at ¶¶ 33-34.)  Thus "the FBI has searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be likely to locate responsive records . . . ."  (*Id*. at ¶ 35.)  Altogether, the FBI's searches fully satisfy its obligations under the FOIA.

**B.     The FBI properly withheld documents that are protected from disclosure by Exemptions 7(D)-(F).**

The Exemption 7 withholdings discussed below all have a threshold requirement that the documents at issue be compiled for law enforcement purposes.  *Rimmer*, 700 F.3d at 256; *Jones*, 41 F.3d at 245.  This threshold is met here.  As discussed above in Section I(A)(i), documents compiled by the FBI—the primary investigative agency of the federal government—per se satisfy the Exemption 7 threshold.  *Jones*, 41 F.3d at 245-46.  In addition, the Seidel Declaration confirms that the "pertinent records were compiled and/or created in furtherance of FBI's law enforcement, national security, and intelligence missions."  (Seidel Decl. ¶ 37.)  Namely, "the FBI created these records in furtherance of its CHS program which allows the FBI to use the assistance of individuals . . . to obtain investigative leads to progress FBI investigations."  (*Id*.)  Thus, the Exemption 7 threshold is met.

> *i.     Plaintiff's request seeks documents and information that are protected by Exemption (7)(D).*

Exemption 7(D) protects from disclosure "records or information compiled for law enforcement purposes," to the extent that production:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on

> a confidential basis, and, in the case of a record or information
> compiled by criminal law enforcement authority in the course of a
> criminal investigation or by an agency conducting a lawful national
> security intelligence investigation, information furnished by a
> confidential source.

5 U.S.C. § 552(b)(7)(D).

Exemption 7(D) protects both the identity of confidential sources, as well as all information obtained from those sources in criminal investigations and national security intelligence investigations.  5 U.S.C. § 552(b)(7)(D).  The Sixth Circuit has held that Exemption 7(D) contains no balancing test.  *Jones*, 41 F.3d at 247 (clarifying that Exemption 7(D) "does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure.").  Its purpose "is to keep open the Government's channels of confidential information."  *Birch v. U.S. Postal Serv*., 803 F.2d 1206, 1212 (D.C. Cir. 1986).

A source is deemed confidential within the meaning of Exemption 7(D) if the source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."  *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (quotation and citation omitted).  In the Sixth Circuit, "it is well-settled that '[i]f a confidential source is later revealed, we nonetheless restrict public access to documents under [Exemption 7(D)] so long as the informant and the agency intended the identity of the source to remain undisclosed at the time the agency compiled the information.' "  *Rimmer*, 700 F.3d at 261 (quoting *Rugiero*, 257 F.3d at 551).  Additionally, even if a confidential source's identity is publicly acknowledged, Exemption 7(D)'s protections still apply to information obtained from the confidential source.  *Cobar v. U.S. Dep't of Justice*, 81 F. Supp. 3d 64, 72 (D.D.C. 2015) (noting that "[t]o the extent plaintiff is arguing that public knowledge of a confidential source's *identity*

precludes application of 7(D) to protect *information provided by* that source, that proposition is clearly wrong.")

The FBI properly withheld information pursuant to this exemption because it determined that "disclosure of records responsive to Plaintiff's request would reveal information provided to it by [Igor Danchenko] under an express assurance of confidentiality."  (Seidel Decl. ¶ 41.) Although the FBI has publicly acknowledged Danchenko as a CHS—"the scope and extent of [his] cooperation with the FBI has not been acknowledged, nor has the confidential information provided by [him] to the FBI." (*Id*. at ¶ 41.)  As a result, Exemption 7(D)'s protections still apply to the information that Danchenko provided. *Rimmer*, 700 F.3d at 261; *Cobar*, 81 F. Supp. 3d at 72.  Disclosure of this information would violate the FBI's confidentiality agreement with Danchenko and would "deter current and future sources from cooperating with the FBI and providing valuable investigative intelligence." (Seidel Decl. ¶ 43.)  Consequently, this information is protected from disclosure and the FBI properly denied Plaintiff's request under Exemption 7(D).

> ii.   *Plaintiff's request seeks documents and information that are protected by Exemption (7)(E).*

Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes," to the extent that production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  In justifying the application of Exemption 7(E), an agency may describe the general nature of the technique while withholding the full details. *See Jud. Watch, Inc. v. U.S. Dep't of State*, 650 F. Supp. 2d 28, 34 n.6 (D.D.C. 2009) (allowing agency to describe techniques and procedures in general terms where greater specificity would undermine the investigation).

The FBI properly denied Plaintiff's request pursuant to Exemption (7)(E) because it determined that "disclosure of the [requested] records would undermine [an] integral and sensitive FBI program"—its CHS program, which allows the FBI to leverage human intelligence sources to obtain investigative leads to progress FBI cases.  (Seidel Decl. ¶ 48.)  Disclosure of records could reveal information about the CHS program that is not publicly known, such as "who, why, and where it seeks to recruit individuals" as CHSs, "how it is able to covertly communicate with CHSs", "the investigative initiatives for which the FBI uses CHS[s]," "the standards by which the FBI evaluates the reliability of its sources," and "details of the FBI's payments" to CHSs.  (*Id*. at ¶¶ 49-50.)  Disclosure of the information described above would enable criminals "to avoid FBI CHSs" or "seek out and retaliate against" CHSs, which would "harm the FBI's ability to gain reliable investigative information in furtherance of its law enforcement mission." (*Id*.)  Therefore, this information is protected from disclosure pursuant to Exemption 7(E) and the FBI properly denied Plaintiff's FOIA request.

   iii. *Plaintiff's request seeks documents and information that are protected by Exemption (7)(F).*

Exemption 7(F) protects from disclosure "records or information compiled for law enforcement purposes," to the extent that production "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  Like Exemption 7(D), Exemption 7(F) contains no balancing test.  *Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002) (noting that "[u]nlike Exemption 7(C), which involves a balancing of societal and individual privacy interests, 7(F) is an absolute ban against certain information and, arguably, an even broader protection than 7(C).").  The scope of Exemption 7(F) is "very broad"—courts have upheld its use to protect more than just the identities of individuals and to qualify for protection, "a reasonable

expectation of endangerment suffices." *Pub. Emps. for Envt'l Resp. v. U.S. Section Int'l Boundary & Water Comm'n*, 740 F.3d 195, 205 (D.C. Cir. 2014).

Because it applies to "any individual," courts have held that Exemption 7(F) protects law enforcement personnel, non-law enforcement federal employees, and other third persons in connection with law enforcement matters, such as informants and sources. *See, e.g., Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 301 (D.D.C. 2011); *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002) (protecting "names and/or identifying information concerning private citizens and third parties who provided information" to the FBI); *Butler v. U.S. Dep't of Justice*, 368 F. Supp. 2d 776, 786 (E.D. Mich. 2005) (protecting information that could endanger lives of individuals who provided information to the DEA). Generally, courts defer to an agency's assessment of harm as long as the agency declarations provide adequate justification for the withholding. *See, e.g., Pinson v. U.S. Dep't of Justice*, 396 F. Supp. 3d 66, 83 (D.D.C. 2019) (finding that "there is a reasonable expectation of endangerment" and deferring to the agency's "expertise in assessing the plausible danger"); *Sandoval v. U.S. Dep't of Justice*, 296 F. Supp. 3d 1, 20 (D.D.C. 2017) ("[d]eferring to the agency's prediction of harm that could occur to individuals who provided the FBI with information" and finding names appropriately withheld).

Here, the FBI concluded that "[d]isclosure of the information provided by Danchenko could be reasonably expected to endanger his life and physical safety." (Seidel Decl. ¶ 55.) Although the government has acknowledged that Danchenko is a CHS, the information he has supplied to the government is not public. (*Id*. at ¶ 54.) It is likely that the information he provided is "derogatory and/or incriminating to individuals who may be involved in criminal activities" and if this information were disclosed, these individuals would "retaliate against him with violence." (*Id*. at ¶ 55.) As a result, the FBI properly withheld responsive records pursuant to 7(F).

**C.      Categorical withholdings are appropriate here.**

"[I]t is well-established that 'the government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document.' " *Vaughn v. United States*, 936 F.2d 862, 868 (6th Cir. 1991) (quoting *North v. Walsh*, 881 F.2d 1088, 1097 n.13 (D.C. Cir. 1989).   This approach is particularly appropriate where "the FOIA litigation process threatens to reveal the very information [an] agency hopes to protect." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1149 (D.C. Cir. 2015) (internal quotation marks omitted).   When making categorical withholdings, an agency must provide "definitions of relevant categories [that] are sufficiently distinct to allow a court to determine whether specific claimed exemptions are properly applied." *Id*. at 1149-50 (internal quotation marks omitted).  *See also Vaughn*, 936 F.2d at 868.   This approach is permissible when "[t]he range of circumstances included in [each] category . . . characteristically support[] an inference that the statutory requirements for exemption are satisfied." *Id*. at 1150.  *See also Reporters Comm.*, 489 U.S. at 776 (categorical denials "may be appropriate . . . when a case fits into a genus in which the balance characteristically tips in one direction.").

The FBI properly issued categorical denials pursuant to FOIA Exemptions 7(D)-(F) here, providing sufficient detail regarding the categories of documents withheld, as well as the reason for the withholding and the harm that could result from disclosure.  As explained in the Seidel Declaration, the investigative file at issue contains two types of documents: (1) CHS Reporting Documents, which are standard forms that document reporting to the FBI by a CHS, and (2) Electronic Communications, which are the primary form of communication within the FBI.  (Seidel Decl. ¶ 56.)  Then, the FBI further separated information within each document into two categories: Evidentiary/Investigative Materials (specifically, confidential source statements) and

Administrative Materials (specifically, reporting communications that allow the FBI to monitor the progress of the investigation and facilitate its conduct).  (*Id*. at ¶¶ 61-62.)

As explained more fully above, Evidentiary/Investigative Materials and Administrative Materials are categorically exempt from disclosure under Exemptions 7(D)-7(F).  To summarize, the volume of these materials are exempt under 7(D) because they contain information provided to the FBI by Danchenko under an express assurance of confidentiality and would reveal the scope and extent of his cooperation with the FBI.  (*Id*. at ¶¶ 40-44, 61-62.)  They are also exempt under 7(E) because disclosure would reveal the FBI's techniques and procedures related to its CHS program, such as "how and when the FBI seeks source assistance in its investigations, the methods employed in vetting source reporting for reliability, the standards by which the FBI evaluates the reliability of its sources, and details of the FBI's payments for employing its confidential source." (*Id*. at ¶¶ 48-51, 61-62.)  If disclosed, this information would provide a "road map" of the FBI's investigation and law enforcement strategy.  (*Id*. at ¶ 62.)  Lastly, these materials are exempt under 7(F) because disclosing the specific information Danchenko provided to the FBI, and the frequency and volume of that information, would be reasonably expected to endanger his life or physical safety.  (*Id*. at ¶¶ 54-55, 61-62.)

## CONCLUSION

The FBI has demonstrated that it responded properly to Plaintiff's FOIA requests. Accordingly, it respectfully requests that its motion for partial summary judgment be granted.

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

Dated: February 15, 2024                          */s/ Laura A. Babinsky*
                                                 LAURA A. BABINSKY
                                                 Assistant United States Attorney
                                                 P.O. Box 208
                                                 Grand Rapids, MI 49501-0208
                                                 (616) 456-2404
                                                 Laura.Babinsky@usdoj.gov