Exhibit 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN MILLIRON,

          Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE;
CENTRAL INTELLIGENCE AGENCY;
FEDERAL BUREAU OF INVESTIGATION;
OFFICE OF THE DIRECTOR OF
NATIONAL INTELLIGENCE,

          Defendants.

_____/

Case No. 1:23-cv-30

Hon. Jane M. Beckering
U.S. District Judge

Hon. Sally J. Berens
U.S. Magistrate Judge

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

1.      I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit, from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act (FOIA) Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act (FOIPA) litigation cases nationwide. Prior to joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration (DEA), from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits

1

nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various

assignments from 1994 to September 2006 culminating in my assignment as Chief, General

Litigation Branch, U.S. Army Litigation Division, where I oversaw FOIPA litigation for the U.S.

Army. I am an attorney licensed in the State of Ohio and the District of Columbia.

2.     In my official capacity as Section Chief of RIDS, I supervise approximately 241

FBI employees, supported by approximately 108 contractors, who staff a total of nine (9) Federal

Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center

units whose collective mission is to effectively plan, develop, direct, and manage responses to

requests for access to FBI records and information pursuant to FOIA as amended by the OPEN

Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of

2016; the Privacy Act (PA) of 1974; Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010);

Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and

Presidential and Congressional directives. The statements contained in this declaration are based

upon my personal knowledge, upon information provided to me in my official capacity, and

upon conclusions and determinations reached and made in accordance therewith.

3.     Because of the nature of my official duties, I am familiar with the procedures

followed by the FBI in responding to requests for information pursuant to the FOIA, 5 U.S.C.

§ 552, and the Privacy Act of 1974 (PA), 5 U.S.C. § 552a. Specifically, I am aware of the FBI's

handling of Plaintiff's FOIA request that is the subject of this litigation.

4.     The FBI submits this declaration in support of Defendant FBI's Motion for Partial

Summary Judgment. Part 1 of this declaration provides the Court and Plaintiff with a summary

of the administrative history of Plaintiff's request and provides the FBI's justification for neither

confirming nor denying the existence of responsive records pursuant to FOIA Exemptions (b)(6)

and (b)(7)(C), 5 U.S.C. § 552(b)(6) and (b)(7)(C) for FOIPA 1558747-000. Part II of this

declaration provides the Court and Plaintiff with a summary of the administrative history of

Plaintiff's request, a description of the FBI's record keeping system and the process used to

search for and review records subject to the FOIA and responsive to Plaintiff's request, and

provides the FBI's justification for categorically denying records pursuant to FOIA Exemptions

(b)(7)(D), (b)(7)(E), and (b)(7)(F), 5 U.S.C. § 552(b)(7)(D), (b)(7)(E), and (b)(7)(F) for FOIPA

1561520-000.

### PART I:  FBI FOIPA REQUEST NUMBER 1558747-000

FBI ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST

5.       By electronic FOIA (eFOIA)[1] dated August 28, 2022, Plaintiff submitted a FOIA

request to the FBI stating: "Manos Antonakakis and David Dagon, both individuals implicated in

fraudulent data alleging a secret Alfa Bank communications channel, have both made public

statements indicating their involvement in attribution for the DNC hack." Plaintiff requested

"any reports, emails, memorandums, or letters in the FBI's possession relating to the hack of the

DNC or Guccifer 2.0 that were provided by David Dagon or Manos Antonakakis." **(Ex. A.)**

6.       By letter dated September 6, 2022, the FBI acknowledged receipt of Plaintiff's

FOIA request, and advised him that his request was assigned FOIPA Request Number 1558747-

000. The FBI also informed Plaintiff of the following: Plaintiff submitted his request via the

FBI's eFOIPA system, the FBI determined it was compliant with the eFOIPA terms of service,

and future correspondence about the request would be provided electronically; and for the

purpose of assessing any fees, the FBI determined as a general (all others) requester, Plaintiff

would be charged applicable search and duplication fees in accordance with 5 U.S.C. § 552

---

[1] An eFOIA is an electronic means by which requesters can submit FOIA requests to the FBI,
online, through the FBI's public website, www.FBI.gov.

(a)(4)(A)(ii)(III). Additionally, the FBI informed Plaintiff he could check the status of his request

and/or contact the FBI with any questions at www.fbi.gov/foia. Furthermore, Plaintiff could

appeal the FBI's response to the DOJ, Office of Information Policy (OIP) within ninety (90) days

of its letter, contact the FBI's public liaison, and/or seek dispute resolution services by contacting

the Office of Government Information Services (OGIS). **(Ex. B.)**

7.      On January 9, 2023, Plaintiff filed the Complaint in the instant action. (ECF No.

1.)

8.      By letter dated October 3, 2023, the FBI denied Plaintiff's request by issuing a

*Glomar*[2] response. Specifically, the FBI advised Plaintiff it would neither confirm nor deny the

existence of the requested records pertaining to a third party pursuant to FOIA Exemptions (b)(6)

and (b)(7)(C) because the mere acknowledgement of the existence of FBI records could

reasonably be expected to constitute an unwarranted invasion of this individual's personal

privacy interest. The FBI informed Plaintiff that he could appeal the FBI's response to OIP

within ninety (90) days of the letter, contact the FBI's public liaison, or seek dispute resolution

services by contacting the OGIS. **(Ex. C.)**

THE FBI'S *GLOMAR* RESPONSE

FOIA EXEMPTION 7 THRESHOLD

9.      The records or information at issue were compiled for law enforcement purposes.

Pursuant to 28 U.S.C. §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney

General's Guidelines for Domestic FBI Operations (AGG-DOM), and 28 C.F.R. § 0.85, the FBI

---

[2] The phrase *"Glomar"* stems from a case in which a FOIA requester sought information
concerning a ship named the *"Hughes Glomar Explorer,"* and the CIA refused to confirm or
deny its relationship with the *Glomar* vessel because to do so would compromise the national
security or divulge intelligence sources and methods. *Phillippi v. CIA,* 655 F 2d. 1325 (D.C. Cir.
1981).

is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and to further the foreign intelligence objectives of the United States.

10.     Since it is the FBI's policy not to conduct a search for responsive records under *Glomar* circumstances, there is no specific statutory investigative authority for compiling the records to cite here. However, by press release[3] dated July 13, 2018, the DOJ acknowledged the indictment charges of twelve Russian nationals committing federal crimes. These individuals, in their official capacities, engaged in a sustained effort to hack into the computer networks of the Democratic Congressional Campaign Committee, the Democratic National Committee, and the presidential campaign of Hillary Clinton, and released that information on the internet under the names "DCLeaks" and "Guccifer 2.0" and through another entity. The DOJ listed the FBI as one of the component agencies involved in the investigation. Thus, the FBI has determined that records provided by Manos Antonakakis and David Dagon, relating to the DNC hack or Guccifer 2.0, if any such records exist, would have been collected and maintained by the FBI as part of this investigation and its law enforcement mission, and as such would meet the threshold requirement of Exemption 7.

PRIVACY *GLOMAR*

11.     The FBI relies on a *Glomar* response in instances where, if responsive records existed, even acknowledging their existence would result in harm protected against by one or more FOIA exemptions. To be credible and effective, the FBI must use a *Glomar* response in all

---

[3] https://www.justice.gov/opa/pr/grand-jury-indicts-12-russian-intelligence-officers-hacking-offenses-related-2016-election (last accessed on February 14, 2024).

similar cases regardless of whether responsive records exist, including instances in which the FBI does not possess records responsive to a particular request. If the FBI were to invoke a *Glomar* response only when it actually possessed responsive records, the *Glomar* response would be interpreted as an admission that responsive records exist.

12.     The FBI has determined that merely acknowledging the existence or non-existence of records responsive to Plaintiff's request would trigger harm under FOIA Exemptions (b)(6) and (b)(7)(C), with respect to the requested third-party records related to Manos Antonakakis and David Dagon named in Plaintiff's request.

### FBI POLICY FOR PROCESSING REQUESTS FOR THIRD-PARTY RECORDS

13.     The FBI's longstanding policy has been to provide an Exemption (b)(6) and (b)(7)(C) *Glomar* response (hereinafter privacy *Glomar*),[4] neither confirming nor denying the existence or non-existence of law enforcement records, in those instances where an individual seeks access to information regarding a third party, unless the requester establishes a significant public interest in disclosure that outweighs the third party's privacy interests. The FBI instituted this policy to protect the privacy rights of individuals, particularly those who appear in FBI law enforcement files. It is well-recognized that individuals have substantial privacy interests in

---

[4] 5 U.S.C. § 552(b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Similarly, 5 U.S.C. § 552(b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." The practice of the FBI is to assert Exemption (b)(6) in conjunction with Exemption (b)(7)(C). Although the balancing test for Exemption (b)(6) uses a "would constitute a clearly unwarranted invasion of personal privacy" standard, and the test for Exemption (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions are sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

relation to being associated with law enforcement investigations because any such association can engender comment, speculation, or harassment; can be embarrassing and stigmatizing; and can, in some circumstances, result in physical harm or threats of harm or death. Statements by an individual alluding to or acknowledging an association with a law enforcement investigation do not extinguish the privacy interests of the third party or constitute a waiver of the third party's privacy interests.

14.     If a requester establishes that disclosure would serve a public interest under the FOIA, then the FBI balances that public interest against the third party's privacy interests. This balancing is done on a case-by-case basis. The FBI will process a request for and release non-exempt law enforcement records about a third party only if it determines that a significant public interest outweighs that individual's privacy interests after conducting the balancing analysis.

15.     For purposes of Exemptions (b)(6) and (b)(7)(C), a public interest exists when disclosure of information about an individual would significantly increase the public's understanding of FBI operations and activities. The balancing of interests under Exemptions (b)(6) and (b)(7)(C) also considers the privacy interests of individuals implicated in a FOIA request. The balancing analysis in each case is necessarily fact specific. Thus, each request must be treated individually, and the FBI must retain flexibility in the way in which it handles each request.

16.     Here, Plaintiff has not submitted: 1) a privacy waiver from any third party; 2) proof of death of any third party as described in the regulation at 28 C.F.R. § 16.3(a); or 3) demonstrated a significant public interest in disclosure of the material sought.

17.     The FBI issued a privacy *Glomar* to protect the privacy interests of the third-party individuals named in Plaintiff's FOIA request, Manos Antonakakis and David Dagon. Here,

Plaintiff is seeking records that, should they exist, would officially confirm these individuals' associations with FBI criminal investigation(s). Official confirmation could reasonably be expected to draw negative and unwanted attention to these individuals; could subject them to harassing inquiries, and otherwise stigmatize and adversely affect them. Plaintiff failed to provide any information to articulate a public interest in disclosure under the FOIA. As such, the substantial privacy interests of these third-party individuals outweigh the non-existent public interest in disclosure.

18.     In sum, Plaintiff provided no third-party waiver or proof of death for Manos Antonakakis or David Dagon. Plaintiff has not articulated a significant public interest in disclosure that would outweigh the third parties' substantial privacy interest in relation to being associated with law enforcement investigations. Therefore, in response to Plaintiff's request for records on any reports, emails, memorandums, or letters in the FBI's possession relating to the hack of the DNC or Guccifer 2.0 that were provided by Manos Antonakakis or David Dagon, the FBI asserted the privacy *Glomar* pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). Finally, when the FBI asserts a privacy *Glomar*, it is policy not to conduct a search for responsive records because the nature of the requested records alone prohibits acknowledgement and disclosure.

## PART II: FBI FOIPA REQUEST NUMBER 1561520-000

### FBI ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST

19.     By electronic FOIA (eFOIA) dated September 17, 2022, Plaintiff submitted a FOIA request to the FBI requesting: "any referrals, 302's, 1023's, or other reports documenting information obtained from Igor Danchenko as a confidential human source for the FBI", and "any documentation over payments made to Igor Danchenko as a CHS." **(Ex. D.)**

20.     By letter dated October 17, 2022, the FBI acknowledged receipt of Plaintiff's FOIA request, and advised him that his request was assigned FOIPA Request Number 1561520-

000. The FBI also informed Plaintiff of the following: Plaintiff submitted his request via the

FBI's eFOIPA system, the FBI determined it was compliant with the eFOIPA terms of service,

and future correspondence about the request would be provided electronically; and for the

purpose of assessing any fees, the FBI determined as a general (all others) requester, Plaintiff

will be charged applicable search and duplication fees in accordance with 5 U.S.C. § 552

(a)(4)(A)(ii)(III). Additionally, the FBI informed Plaintiff he could check the status of his request

and/or contact the FBI with any questions at www.fbi.gov/foia. Furthermore, Plaintiff could

appeal the FBI's response to OIP within ninety (90) days of its letter, contact the FBI's public

liaison, and or seek dispute resolution services by contacting the OGIS. **(Ex. E.)**

21.     On January 9, 2023, Plaintiff filed the Complaint in the instant action. (ECF No.

1.)

22.     By letter dated March 10, 2023 the FBI advised Plaintiff that the material he

requested is exempt from disclosure pursuant to FOIA exemptions (b)(6), (b)(7)(C), (b)(7)(D),

(b)(7)(E), and (b)(7)(F) [5 U.S.C. § 552 (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F)].[5]

The FBI informed Plaintiff his request specifically seeks FBI confidential informant records.

Release of records responsive to his request would reveal confidential informant identities and

information, expose law enforcement techniques, and endanger the life or physical safety of

individuals. Additionally, Plaintiff could appeal the FBI's response to OIP within ninety (90)

days of its letter, contact the FBI's public liaison, and or seek dispute resolution services by

contacting the OGIS. **(Ex. F.)**

---

[5] The FBI is no longer categorically withholding the responsive records pursuant to Exemptions 6 and 7(C). However, Exemptions 6 and 7(C) apply to the records as underlying exemptions, and the FBI reserves the right to apply those exemptions to the responsive records in the event its categorical withholding is denied.

## THE FBI'S CENTRAL RECORDS SYSTEM AND SEARCH METHODOLOGY

23.     Plaintiff's request seeks reports documenting information obtained from Igor Danchenko as a confidential human source (CHS) for the FBI, and documentation over payments made to Igor Danchenko as a CHS. Given the comprehensive nature of the information contained therein (see ¶ 26, *infra*), the Central Records System (CRS) is the FBI system of records where responsive records would reasonably be expected to be found.

### THE FBI'S CENTRAL RECORDS SYSTEM

24.     The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law enforcement and intelligence agency, and in the fulfillment of its administrative and personnel functions. The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters (FBIHQ), FBI Field Offices, and FBI legal attaché offices (legats) worldwide.

25.     The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subjects. The broad array of CRS file classification categories include types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number (UCFN) consisting of three sequential components: (a) the CRS file classification number, (b) the abbreviation of the FBI Office of Origin opening the file, and (c) the assigned individual case file number for the particular subject

matter.[6] Within each case file, pertinent documents of interest are "serialized," or assigned a number in the order which the document is added to the file, typically in chronological order.

*The Central Records System's General Indices and Indexing*

26.     The general indices to the CRS, comparable to a digital version of a library card catalog, function as the key to locating records within the enormous amount of information contained in the CRS. FBI personnel index information in the CRS by individual (person), organizations (entity, place, or thing), or activity or event (e.g., terrorist attack or bank robbery) when information is deemed sufficient significance to warrant indexing for future retrieval.[7] The entries in the general indices fall into two categories:

> A. <u>Main entry</u>. A main index entry is created for each individual or non-
>
> individual (e.g., organization, event, or activity) that is the subject or focus of
>
> an investigation. Main subjects are identified in the case title of a file.
>
> B. <u>Reference entry</u>. A reference index entry is created for each individual or
>
> non-individual (e.g., organization, event, or activity) associated with an
>
> investigation, but who or which is not the main subject or focus of the

---

[6] For example, in fictitious file number "11Z-HQ-56789," "11Z" indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI Office of Origin, and "56789" indicates the assigned case specific file number.

[7] The FBI's Records Management Policy mandates that FBI personnel enter all federal records into an authorized FBI recordkeeping system. FBI personnel are responsible for managing records they create and receive, determining the record status for each potential record, and importing records into an electronic recordkeeping system. *See* FBI Records and Information Management Policy Guide, 1223PG (September 22, 2022) at pp. 11-12 and 25-28 (Sections 2.9 and 4.2.3) available at https://vault.fbi.gov/records-and-information-management-policy-guide-1223pg/records-and-information-management-policy-guide-1223pg/view (last accessed on February 14, 2024).

investigation. Reference subjects are typically not identified in the case title of a file.

SENTINEL

27.     FBI personnel access the general indices through Sentinel, the FBI's case management system (since July 1, 2012). Prior to Sentinel, the FBI relied on a case management system known as Automated Case Support (ACS).[8] On August 1, 2018, the FBI decommissioned ACS and the ACS indices were migrated into Sentinel, where they are accessible and searchable through Sentinel's indices search function. In addition to providing access to the ACS indices, Sentinel provides a means for FBI personnel to access the FBI's older manual indices, when necessary.

28.     FBI personnel rely on Sentinel to locate records and other types of documents to fulfill essential functions, such as conducting criminal, counterterrorism, and national security investigations; conducting background investigations; performing citizenship and employment

---

[8] As part of the ACS implementation process, over 105 million pre-existing CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices. Prior to the implementation of ACS, the FBI relied on manual indices to the CRS, which originally consisted of 3"x 5" paper index cards, filed alphabetically based on subject matter (individual, event, organization, or other topic of investigative or administrative interest to the FBI) and housed across the FBI in various locations. The index cards contained the subject of interest and the file number(s) where the subject's information was located. The FBI's 1995 ACS consolidation did not capture all the FBI's manual indices and, as a result, not all the FBI's manual indices migrated with ACS into Sentinel in August 2018. Instead, the manual indices were digitized, using optical character recognition technology, and Sentinel provides a conduit to access and search the manual indices electronically. Similar to the consolidation of all indexed record data from prior automated CRS systems superseded by ACS, the prior automated Electronic Surveillance (ELSUR) Indices also interfaced with ACS upon its implementation in 1995.  As a result, the names of targeted subjects, as well as facilities and places, surveilled since January 1, 1960, are indexed within, and searchable by, the same Sentinel search function now employed to search the ACS indices. The ELSUR indices have a distinct legal identity from the CRS as a different Privacy Act System of Records, however, in terms of function, information from the ELSUR indices is indexed within the CRS and retrieved via the index search functions available in Sentinel.

12

queries; and administering security screenings; to include presidential protection. Sentinel's index search methodology and function allows FBI personnel to query the CRS for indexed subjects in case files.

29.     However, the identification of records indexed to the subject of a FOIPA request does not automatically mean the indexed records are responsive. Index searches using the search functions available in Sentinel are how potentially responsive records are located, but ultimately, a FOIPA analyst must review potentially responsive records against the specific parameters of individual requests. Responsiveness determinations are made once indexed records are gathered, analyzed, and sorted by FOIPA analysts who then make informed scoping decisions to determine the total pool of records responsive to an individual request.

ADEQUACY OF SEARCH

*Central Records System Search and Results*

30.     The FBI determined that a search of the CRS automated indices, available within Sentinel via the Sentinel and ACS search function and the Manual indices, accessed via Sentinel represented the most reasonable means for the FBI to locate records potentially responsive to Plaintiff's FOIPA request. This is because, as described above, the general indices provide access to a comprehensive, agency-wide set of indexed data on a wide variety of investigative and administrative subjects and consist of millions of searchable records that are updated daily with newly indexed information the requested subject matter predates and/or overlaps the implementation of both Sentinel and ACS, a manual indices search was required. Then, the FBI built on its Manual index search by conducting an index search of both the ACS and Sentinel indices to ensure it captured all relevant data indexed after the implementation of ACS and Sentinel.

31.     In response to Plaintiff's request, the FBI, via RIDS, conducted a search for FBI

13

main entries[9] in the Sentinel, ACS, and Manual indices via Sentinel's search function. The FBI

searched the indices using the following term: "Igor Danchenko" in Sentinel and "Danchenko,

Igor" in ACS and Manual indices, employing a search cut-off date[10] of October 19, 2022, which

is the date of the FBI's initial search for records. The FBI did not locate responsive records as a

result of this search.

*Targeted Search and Results*

32.     The FBI determined that a search of the Sentinel, ACS, or Manual Indices did not

result in the location of records responsive under the FOIA. Therefore, the FBI took the

extraordinary step of conducting a targeted search outside the CRS.

33.     Specifically, the FBI, via RIDS, conducted a targeted search of the FBI's

Confidential Human Source database, Delta[11]. The FBI determined that Delta was the most

reasonably likely location to house responsive records because Delta is responsible for housing

all CHS records.

34.     On October 24, 2022, the FBI, via RIDS, requested International Operations

Division complete a Delta search for records pertaining to Igor Danchenko. As a result of this

search, the FBI located records responsive to Plaintiff's request.

35.     Plaintiff has provided no information for the FBI to reasonably conclude that

records responsive under the FOIA would reside in any other location and there is no indication

---

[9] *See* ¶ 26, *infra*, for an explanation of main and reference entries.

[10] A search cut-off date is the date that the agency commences a search for records responsive to
a FOIPA request. Generally, the FBI uses a search cut-off date to delineate the scope of a FOIPA
request by treating records created after that date as not responsive to the request. *See* 28 C.F.R.
§ 16.4(a). The Department of Justice (DOJ) provides notice of the use of a search cut-off date in
its published FOIA reference guide on its FOIA website (https://www.justice.gov/oip/doj-guide-
freedom-information-act-0) (last accessed February 14, 2024)

[11] Delta is the FBI's official electronic record-keeping system for CHS management.

14

from the FBI's targeted search efforts that responsive records would reside in any other FBI location. Thus, the FBI has searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be likely to locate responsive records under the FOIA.

JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA: THE FBI'S CATEGORICAL WITHHOLDING OF RECORDS PURSUANT TO EXEMPTIONS 7(D), 7(E), AND 7(F)[12]

EXEMPTION 7 THRESHOLD

36.     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 U.S.C. §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein were compiled for the following specific law enforcement purpose.

37.     The pertinent records were compiled and/or created in furtherance of FBI's law enforcement, national security, and intelligence missions. To accomplish these missions, inherent

---

[12] The parties have agreed to bifurcated summary judgment briefing for FOIPA Request No. 1561520-000, whereby the parties initially brief only the issue of the categorical withholdings pursuant to Exemptions 7(D), 7(E), and 7(F). If Plaintiff prevails, then the FBI would process the records for additional FOIA exemptions. As such, this part of the declaration addresses only the applicability of Exemptions 7(D), 7(E), and 7(F). The FBI reserves review of the records for exemptions that must be made on a page-by-page basis until after the court's ruling on the applicability of Exemptions 7(D), 7(E), and 7(F), to the extent that any issue remains requiring FBI to undertake a page-by-page review for individual exemptions.

task and operational functions are required, to include the development, implementation, and operation of law enforcement programs or systems used as law enforcement and/or intelligence gathering methods, tools, techniques, and/or procedures. Specifically, the FBI created these records in furtherance of its CHS program which allows the FBI to use the assistance of individuals, referred to as human intelligence, to obtain investigative leads to progress FBI investigations.

### EXEMPTION 7(D) – CONFIDENTIAL SOURCE INFORMATION

38.   Exemption 7(D) exempts "records or information compiled for law enforcement purposes" when disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

39.   Numerous confidential sources report to the FBI on a regular basis; they provide information under express assurances of confidentiality and are "informants" within the common meaning of the term. Others are interviewed and/or provide information under implied assurances of confidentiality (*i.e.*, under circumstances from which assurances of confidentiality may be inferred). In either situation, these sources are considered to be confidential because they furnish information only with the understanding that the information they provided will not be divulged outside the FBI.  Information provided by these sources is singular in nature. The FBI has learned through experience that sources assisting, cooperating with, and providing information to the FBI must be free to do so without fear of reprisal.  The FBI has also learned that sources must be free to furnish information to the FBI with complete candor and without the

understandable tendency to hedge or withhold information because of fear that the extent of their cooperation with the FBI will later be made public. Sources providing information to the FBI should be secure in the knowledge that their assistance will be held in confidence.

EXEMPTION 7(D) – CATEGORICAL DENIAL

40.     The FBI applied FOIA Exemption (b)(7)(D) to categorically exempt records specifically requested by Plaintiff.[13] Disclosure of the records would reveal information provided to the FBI by a confidential human source under an express assurance of confidentiality. This determination extends to the volume of responsive records in the file because such information would reveal the scope and extent of the FBI's use of its CHS and the information provided to the FBI by the CHS.

41.     When responding to Plaintiff's FOIA request, the FBI determined disclosure of records responsive to Plaintiff's request would reveal information provided to it by a confidential informant under an express assurance of confidentiality. Although the CHS has been acknowledged by the government, the scope and extent of the CHS' cooperation with the FBI has not been acknowledged, nor has the confidential information provided by the CHS to the FBI.

42.     CHS reported information is gathered under express assurances of confidentiality. When the FBI enters into a relationship with a confidential source, it agrees to uphold its obligations to that source, including its primary responsibility to keep all documents and information related to the source strictly secret. The FBI cannot violate this confidentiality agreement with regard to any non-public source-related documents or it risks the integrity of its entire CHS program. Without these assurances of confidentiality by the FBI, those with access to

---

[13] See ¶ 19, *supra*.

information critical to FBI investigations may be reluctant to provide information or may modify their statements in order to lessen the severity of any backlashes; therefore, the FBI must provide credible assurances of confidentiality to these individuals in order to obtain factual, relevant, and timely information.

43.      Disclosure of the information responsive to Plaintiff's request, including information provided by Igor Danchenko and information related to his payments, would violate the FBI's confidentiality agreement with Danchenko. Revealing such information would indicate the scope of his cooperation with the FBI, to potentially include how much information he provided or how many investigations he assisted with. Revealing information about his payments would disclose both the value and the amount of information he provided to the FBI. Not only would disclosure of this information violate the FBI's confidentiality agreement with Danchenko, but it would also deter current and future sources from cooperating with the FBI and providing valuable investigative intelligence.

44.      In sum, the FBI categorically withheld information supplied by Igor Danchenko to the FBI with an express assurance that the information he provided would be held in confidence. Release of such information would endanger Danchenko and cause great detriment to the FBI's ability to recruit and maintain reliable CHSs; thus, this information is categorically exempt from disclosure pursuant to FOIA Exemptions (b)(7)(D).

EXEMPTION 7(E) - INVESTIGATIVE TECHNIQUES AND PROCEDURES

45.      FOIA Exemption (b)(7)(E) provides protection for: "law enforcement records [which]…would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. §

552(b)(7)(E).

46.     Exemption (b)(7)(E) has been asserted to protect information from these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

47.     Within the responsive documents, the FBI applied Exemption (b)(7)(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement mission, and also to non-public details about techniques and procedures that are otherwise known to the public.

## EXEMPTION 7(E) – CATEGORICAL DENIAL

48.     The FBI applied FOIA Exemption (b)(7)(E) to categorically exempt records specifically requested by Plaintiff.[14] First, as previously demonstrated, these are law enforcement records compiled in furtherance of the FBI's CHS program which allows the FBI to leverage Human Intelligence to obtain investigative leads to progress FBI cases. Second, disclosure of the records would undermine this integral and sensitive FBI program. This determination extends to the volume of responsive records in the file because such information would reveal the scope and extent of the FBI's use and strategies for CHSs in FBI investigations, which would also interfere with ongoing operations.

49.     The FBI's strategies and techniques for maintaining effective CHSs outlined in the records at issue are not publicly known. Revealing the FBI's strategies and documentation for CHS implementation would also reveal to criminals which individuals are or may potentially become FBI informants, based on what types of information the FBI plans to gather through its

---

[14] See ¶ 19, *supra*.

CHS program.

50.     The FBI's informant program is one of the FBI's most effective means for gathering information relative to its law enforcement and intelligence gathering missions. In order to preserve the integrity of this program, the FBI closely guards the nature of its informant program to include who, why, and where it seeks to recruit particular individuals as FBI informants; how it is able to covertly communicate with its CHSs; and the investigative initiatives for which the FBI uses CHS intelligence gathering. The FBI categorically withheld the records at issue pursuant to Exemption 7(E) to protect the details of the CHS program that would be revealed by the disclosure of source reporting and source payments. Disclosure of these records would reveal how and when the FBI seeks source assistance in its investigations, the methods employed in vetting source reporting for reliability, the standards by which the FBI evaluates the reliability of its sources, and details of the FBI's payments for employing its confidential source, including how and when it employs those payments for investigative purposes. If this type of information was revealed, criminals would be able to pinpoint potential FBI confidential sources and detect the FBI's use of its CHS program as a law enforcement technique. This would enable criminals to avoid FBI CHSs, or potentially seek out and retaliate against these sources in the interest of evading the FBI's detection, ultimately harming the FBI's source program, and cutting off valuable sources of investigative information. Such a disclosure of sensitive information pertaining to the CHS program would harm the FBI's ability to gain reliable investigative information in furtherance of its law enforcement mission.

51.     Thus, as releasing these sensitive techniques and strategies for utilizing CHSs could undermine the law enforcement purpose of the FBI's CHS program, enabling criminals to circumvent the law, this information is categorically exempt from disclosure pursuant to FOIA

Exemptions (b)(7)(E).

## EXEMPTION 7(F) - ENDANGERMENT OF THE LIVES AND PHYSICAL SAFETY OF INDIVIDUALS

52.     5 U.S.C. § 552 (b)(7)(F) permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual."

53.     Within the records at issue, the FBI asserted Exemption 7(F) to protect the information provided to it by Igor Danchenko, as the FBI believes he would likely face violent retaliation if this information were disclosed.

## EXEMPTION 7(F) – CATEGORICAL DENIAL

54.     The FBI applied FOIA Exemption (b)(7)(F) to categorically exempt records specifically requested by Plaintiff.[15] The FBI specifically asserted Exemption (b)(7)(F) to protect the information provided by Igor Danchenko. Although the source's identity has been acknowledged by the government, as discussed in ¶ 41, the scope and specifics of information provided by Danchenko have not been made public.

55.     Disclosure of the information provided by Danchenko could be reasonably expected to endanger his life and physical safety. Any information provided by him for an investigative purpose is likely derogatory and/or incriminating to individuals who may be involved in criminal activities. If this information were disclosed, it is likely the individuals about whom Danchenko reported would retaliate against him with violence. This is especially likely considering the high-profile, extremely public nature of Danchenko and the widespread disclosure of his identity and association with an FBI investigation. Making public any

---

[15] See ¶ 19, *supra*.

21

information he provided to the FBI would only serve to put him in an even more vulnerable position and subject him to physical harm and even death, whether from the individuals regarding whom he provided information or members of the public. Thus, as release of the responsive information would be reasonably expected to endanger the life or physical safety of its CHS, the FBI categorically withheld the responsive records pursuant to Exemption 7(F).

TYPES OF DOCUMENTS

56.     Providing any further detailed document-by-document description or listing of the records contained in the investigative file responsive to Plaintiff's request besides the information *infra* would undermine the very interests that the FBI seeks to protect under Exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F). The investigative file at issue contains the following types of documents:

a.  CHS Reporting Document (FD-1023): Standard form that documents reporting to the FBI by CHS. This CHS provided information may later be used as testimony or evidence in court proceedings/trials. Additionally, this information can be incorporated in other FBI documents which disseminate intelligence/investigative information and can be utilized to set leads in furtherance of the FBI's investigative efforts.

b.  Electronic Communications (ECs)/ FD-1057s: ECs replaced the traditional FBI correspondence (i.e., Memoranda and Letters) as the primary vehicle of correspondence within the FBI.  The purpose of an EC is to communicate within the FBI in a consistent format that can be uploaded by the originating Division or office, transmitted, and downloaded by recipient Divisions or offices within the FBI's internal computer network.  These forms are often utilized to record and

disseminate intelligence/investigative information and for general investigation administration purposes.

### FUNCTIONAL CATEGORIES OF INFORMATION

57.    In processing requests, the FBI has established procedures to implement the FOIA as efficiently as possible. When the FBI receives a request for records which it determines relates to specific acknowledged confidential sources, or specific sensitive investigative programs, in this case its CHS program, it commonly will categorically exempt records pursuant to FOIA exemptions. Here the FBI is categorically exempting the requested material pursuant to Exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F) to protect the FBI's CHS and to protect details regarding its CHS program. Nonetheless, in such situations, the FBI reviews the records to identify and release any reasonably segregable information contained in the responsive file that would not jeopardize this sensitive information. The FBI has reviewed all records responsive to Plaintiff's request and concluded that it cannot release or provide specific information related to the responsive records without disclosing information provided by a confidential source, potentially jeopardizing its CHS program, and putting the life and safety of its source at risk.

58.    The FBI's mission could not be accomplished without CHSs. The CHS program is comprised of methods, techniques, and procedures for recruitment and utilization of confidential information, and it is the primary method by which the FBI leverages human intelligence to maximize the execution of its law enforcement mission. Among other things, the type of information in source files may include: when an individual should be identified and evaluated, and techniques for their recruitment; applicable standard for and methods of payments of a confidential human source; standards for communicating with confidential human source; and methods for acquiring information from confidential human sources. Additionally, the

responsive records contain specific investigative information provided to the FBI by its CHS. Therefore, the responsive records could fairly be characterized as consisting of records the release of which would disclose the information provided by the CHS, investigative techniques and procedures employed in the FBI's CHS program, and could endanger the life and safety of the CHS and thus are eligible for categorical withholding under FOIA Exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F) in their entirety. In addition to these harms, once this information is released to the Plaintiff and in the public domain, its use and dissemination is unrestricted.

59.     The FBI has reviewed and categorized the types of exempt records into two categories – Evidentiary/Investigative Materials and Administrative Materials. Both categories will be discussed in more detail below.

60.     The record can fall into one or more functional categories as described in the below paragraphs. For example, a record, such as an FBI Investigative Report, may serve several purposes and may contain multiple categories of information, such as witness statements, administrative directions, and/or evidentiary materials. Therefore, the information in each record could be included in both categories.

Category I: Evidentiary/Investigative Materials

61.     This category includes copies of records or evidence, analyses of evidence, and derivative communications discussing or incorporating evidence. A derivative communication describes, verbatim or in summary, the contents of the original record. The following subparagraphs describe the types of evidentiary materials in the responsive records and the anticipated harm that could reasonably result from the release of the materials.

      a.  <u>Confidential Source Statements</u>: Confidential source statements are one of the principal tools used in proving the facts that form the basis for a prosecution.

24

These statements contain information obtained from the confidential informant who is the subject of Plaintiff's request and has knowledge of criminal activities investigated by the FBI. If this information was released, the confidential source that has chosen to cooperate with law enforcement could be subjected to retaliation, intimidation, or physical or mental harm. This could have a chilling effect on the future investigative efforts and prosecutions in this and other cases because potential witnesses and/or confidential sources might fear exposure and reprisals from the subjects of these investigations. Implicit in conducting interviews in investigations of this nature is the notion that an individual's identity and the information provided by them will be afforded confidentiality. The FBI goes to great lengths to protect and maintain an individual's confidentiality since it is an integral part of a successful investigation and prosecution. The release of confidential source statements would disrupt and harm future investigative and/or prosecutive actions.

Category II: Administrative Materials

62.     Materials falling within this category include items such as case captions, serial numbers, identities of FBI field offices, dates of investigations, and detailed instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ guidelines. The following subparagraphs describe the types of administrative materials contained in the files. In many instances, administrative information is contained at the beginning or end of correspondence or documents that fall within other categories of documents; therefore, to release details on this category of information would also reveal the investigative interests of the FBI and could enable suspects to discern a "road map" of the investigation or law

enforcement strategy.

    a.  <u>Reporting Communications</u>: These communications permit an agency to monitor the progress of the investigation and to facilitate its conduct. These communications have the potential to reveal or confirm the cooperation of other local, state, federal, or foreign government agencies in this investigation. These communications are replete with detailed information about the FBI's investigative activities as well as detailed information about potential witnesses/confidential sources for interview. Additionally, they contain background information about third party individuals, the origins of pertinent information connecting them to the investigation, and their connections to subjects and their relationship FBI investigations. The release of this information would reveal the nature and scope of the source reporting by revealing: details about investigations on which the CHS reported; techniques and investigative methods used to compile and/or solicit information from the CHS, including payments and funding; and any source vetting or reliability determinations.

**CONCLUSION**

63.    In reviewing Plaintiff's first FOIA request, the FBI determined it could neither confirm nor deny whether it possesses records responsive to Plaintiff's request pursuant to FOIA Exemptions (b)(6) and (b)(7)(C), because merely confirming or denying the existence of such records could reasonably be expected to invade the personal privacy interest of Manos Antonakakis and David Dagon.

64.    In response to Plaintiff's second FOIA request, the FBI performed an adequate and reasonable search for responsive records and properly categorically denied access to the

informant records responsive to Plaintiff's second request. The FBI properly categorically denied

access to the responsive records pursuant to FOIA Exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F)

to protect information that if disclosed, could reasonably be expected to disclose the information

Igor Danchenko provided; would disclose techniques and procedures for law enforcement

investigations; and/or could reasonably be expected to endanger the life or physical safety of

Danchenko. Lastly, after review of the documents at issue, the FBI determined that there is no

non-exempt information that can be reasonably segregated and released without revealing

exempt information.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that Exhibits A through F attached hereto are true and correct copies.

Executed this _15th_ day of February 2024.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN MILLIRON,

        Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE;
CENTRAL INTELLIGENCE AGENCY;
FEDERAL BUREAU OF INVESTIGATION;
OFFICE OF THE DIRECTOR OF
NATIONAL INTELLIGENCE,

        Defendants.

_____/

Case No. 1:23-cv-30

Hon. Jane M. Beckering
U.S. District Judge

Hon. Sally J. Berens
U.S. Magistrate Judge

# Exhibit A

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2022-08-28T16:16:18.278951+00:00 Status: pending Message:

# Individual Information

| | |
|---:|:---|
| **Prefix** | |
| **First Name** | Ryan |
| **Middle Name** | |
| **Last Name** | Milliron |
| **Suffix** | |
| **Email** | ryanmilliron1@gmail.com |
| **Phone** | |
| **Location** | United States |

# Domestic Address

| | |
|---:|:---|
| **Address Line 1** | 14579 Tupelo Dr |
| **Address Line 2** | |
| **City** | West Olive |
| **State** | Michigan |
| **Postal** | 49460 |

# Agreement to Pay

| | |
|---:|:---|
| **How you will pay** | I am willing to pay additional fees and will enter the maximum amount I am willing to pay in the box below. |

**Allow up to $** 100

## Non-Individual FOIA Request

**Request Information**

```
Manos Antonakakis and David Dagon, both individuals implicated in fraudulent
data alleging a secret Alfa Bank communications channel, have both made
public statements indicating their involvement in attribution for the DNC
hack.

This precludes any information from being withheld due to classification
issues, as public information cannot be classified.

I request any reports, emails, memorandums, or letters in the FBI's
possession relating to the hack of the DNC or Guccifer 2.0 that were
provided by David Dagon or Manos Antonakakis.
```

**

Please be advised that efoia@subscriptions.fbi.gov is a no-reply email address. Questions regarding your FOIA request may be directed to foipaquestions@fbi.gov. If you have received a FOIPA request number, please include this in all correspondence concerning your request. Please note eFOIPA requests are processed in the order that they are received. If you have not received a FOIPA request number, your request is in the process of being opened at which time it will be assigned a FOIPA request number and correspondence will be forthcoming.

**

Upon receipt of your FOIPA request number, you may check the status of your FOIPA request on the FBI's electronic FOIA Library (The Vault) on the FBI's public website, http://vault.fbi.gov by clicking on the 'Check Status of Your FOI/PA Request tool' link. Status updates are performed on a weekly basis. If you receive a comment that your FOIPA request number was not located in the database, please check back at a later date.

----END MESSAGE----

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN MILLIRON,

            Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE;
CENTRAL INTELLIGENCE AGENCY;
FEDERAL BUREAU OF INVESTIGATION;
OFFICE OF THE DIRECTOR OF
NATIONAL INTELLIGENCE,

            Defendants.

_____/

Case No. 1:23-cv-30

Hon. Jane M. Beckering
U.S. District Judge

Hon. Sally J. Berens
U.S. Magistrate Judge

# Exhibit B



**U.S. Department of Justice**



**Federal Bureau of Investigation**

*Washington, D.C. 20535*

September 6, 2022

MR. RYAN JAMES MILLIRON
14579 TUPELO DRIVE
WEST OLIVE, MI 49460

FOIPA Request No.: 1558747-000
Subject: Any Records provided by David
Dagon and Manos Antonakakis related to
the Hack of the DNC or Guccifer 2.0

Dear Mr. Milliron:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI.  Below you will find check boxes and informational paragraphs about your request, as well as specific determinations required by these statutes.  Please read each one carefully.

☑ Your request has been received at FBI Headquarters for processing.

☑ You submitted your request via the FBI's eFOIPA system.

☑ Future correspondence about your FOIPA request will be provided in an email link unless the record file type is not supported by the eFOIPA system.

☐ Correspondence for requests regarding living individuals, or containing audio, video, and high resolution photographs cannot be sent through the eFOIPA system.   Future correspondence about your FOIPA request will be delivered through standard mail.

☐ The subject of your request is currently being processed and documents subject to the FOIPA will be released to you upon completion.

☐ Release of responsive records subject to the FOIPA will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☐ Your request for a public interest fee waiver is under consideration and you will be advised of the decision if fees are applicable.   If your fee waiver is not granted, you will be responsible for applicable fees per your designated requester fee category below.

☑ For the purpose of assessing any fees, we have determined:

☐ As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

☐ As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

☑ As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.fbi.gov/foia by clicking on **FOIPA Status** and entering your FOIPA Request Number.   Status updates are adjusted weekly.   The status of newly assigned requests may not be available until the next weekly update.   If the FOIPA has been closed the notice will indicate that appropriate correspondence has been mailed to the address on file.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.   Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by emailing the FBI's FOIA Public Liaison at foipaquestions@fbi.gov.   The subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.   You may also contact the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information
   Dissemination Section
Information Management Division

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN MILLIRON,

              Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE;
CENTRAL INTELLIGENCE AGENCY;
FEDERAL BUREAU OF INVESTIGATION;
OFFICE OF THE DIRECTOR OF
NATIONAL INTELLIGENCE,

              Defendants.

_____/

Case No. 1:23-cv-30

Hon. Jane M. Beckering
U.S. District Judge

Hon. Sally J. Berens
U.S. Magistrate Judge

# Exhibit C



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

October 3, 2023

MR. RYAN JAMES MILLIRON
14579 TUPELO DRIVE
WEST OLIVE, MI 49460

FOIPA Request No.: 1558747-000
Civil Action No.: 23-cv-30
Subject: Any Records provided by David
Dagon and Manos Antonakakis related to
the Hack of the DNC or Guccifer 2.0

Dear Mr. Milliron:

This is in response to your Freedom of Information/Privacy Acts (FOIPA) request.

You have requested records on one or more third party individuals.   Please be advised the FBI will neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C).   The mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy.   This is our standard response to such requests and should not be taken to mean that records do, or do not, exist. Please visit www.fbi.gov/foia and select "Requesting FBI Records" for more information about making requests for records on third party individuals (living or deceased).

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.   **"Part 1"** of the Addendum includes standard responses that apply to all requests.   **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals. **"Part 3"** includes general information about FBI records that you may find useful.   Also enclosed is our Explanation of Exemptions.

If you submitted your request through the FBI's eFOIPA portal and you are receiving correspondence through standard mail, it was determined your request did not meet the eFOIPA terms of service.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.   Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by emailing the FBI's FOIA Public Liaison at foipaquestions@fbi.gov.   The subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.   You may also contact the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

Please direct any further inquiries about this case to the attorney representing the Government in this matter.  Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division

Enclosures

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request.   Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information.   Part 3 includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i)  **5 U.S.C. § 552(c).**   Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)].   FBI responses are limited to those records subject to the requirements of the FOIPA.  Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)  **Intelligence Records.**   To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)].   The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].   This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)  **Requests for Records about any Individual—Watch Lists.**   The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].   This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)  **Requests for Records about any Individual—Witness Security Program Records.**   The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

(iii)  **Requests for Confidential Informant Records.** The FBI can neither confirm nor deny the existence of confidential informant records pursuant to FOIA exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F) [5 U.S.C.§ § 552 (b)(7)(D), (b)(7)(E), and (b)(7)(F)] and Privacy Act exemption (j)(2) [5 U.S.C.§ 552a (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records would reveal confidential informant identities and information, expose law enforcement techniques, and endanger the life or physical safety of individuals. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)  **Record Searches and Standard Search Policy.**   The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems, such as the Central Records System (CRS), or locations where responsive records would reasonably be found. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions.  The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. The standard search policy is a search for main entity records in the CRS. Unless specifically requested, a standard search does not include a search for reference entity records, administrative records of previous FOIPA requests, or civil litigation files.

   a.  *Main Entity Records* – created for individuals or non-individuals who are the subjects or the focus of an investigation

   b.  *Reference Entity Records*- created for individuals or non-individuals who are associated with a case but are not known subjects or the focus of an investigation

(ii)  **FBI Records.**   Founded in 1908, the FBI carries out a dual law enforcement and national security mission.   As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)  **Foreseeable Harm Standard.**   As amended in 2016, the Freedom of Information Act provides that a federal agency may withhold responsive records only if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates, or (2) disclosure is prohibited by law (5 United States Code, Section 552(a)(8)(A)(i)).   The FBI considers this foreseeable harm standard in the processing of its requests.

(iv)  **Requests for Criminal History Records or Rap Sheets.**   The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet.   These criminal history records are not the same as material in an investigative "FBI file."   An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.   For a fee, individuals can request a copy of their Identity History Summary Check.   Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.   Additionally, requests can be submitted electronically at www.edo.cjis.gov.   For additional information, please contact CJIS directly at (304) 625-5590.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal  privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN MILLIRON,

       Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE;
CENTRAL INTELLIGENCE AGENCY;
FEDERAL BUREAU OF INVESTIGATION;
OFFICE OF THE DIRECTOR OF
NATIONAL INTELLIGENCE,

       Defendants.

_____/

Case No. 1:23-cv-30

Hon. Jane M. Beckering
U.S. District Judge

Hon. Sally J. Berens
U.S. Magistrate Judge

# Exhibit D

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2022-09-17T19:49:11.705230+00:00 Status: pending Message:

## Individual Information

**Prefix**

**First Name** ryan

**Middle Name**

**Last Name** milliron

**Suffix**

**Email** ryanmilliron1@gmail.com

**Phone**

**Location** United States

## Domestic Address

**Address Line 1** 14579 tupelo dr

**Address Line 2**

**City** west olive

**State** Michigan

**Postal** 49460

## Agreement to Pay

**How you will pay** I am willing to pay additional fees and will enter the maximum amount I am willing to pay in the box below.

**Allow up to $** | 100

## Non-Individual FOIA Request

**Request Information** |
```
I request any referrals, 302's, 1023's, or other reports documenting
information obtained from Igor Danchenko as a confidential human source for
the FBI.

I also request any documentation over payments made to Igor Danchenko as a
CHS.
```

**

Please be advised that efoia@subscriptions.fbi.gov is a no-reply email address. Questions regarding your FOIA request may be directed to foipaquestions@fbi.gov. If you have received a FOIPA request number, please include this in all correspondence concerning your request. Please note eFOIPA requests are processed in the order that they are received. If you have not received a FOIPA request number, your request is in the process of being opened at which time it will be assigned a FOIPA request number and correspondence will be forthcoming.

**

Upon receipt of your FOIPA request number, you may check the status of your FOIPA request on the FBI's electronic FOIA Library (The Vault) on the FBI's public website, http://vault.fbi.gov by clicking on the 'Check Status of Your FOI/PA Request tool' link. Status updates are performed on a weekly basis. If you receive a comment that your FOIPA request number was not located in the database, please check back at a later date.

----END MESSAGE----

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN MILLIRON,

           Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE;
CENTRAL INTELLIGENCE AGENCY;
FEDERAL BUREAU OF INVESTIGATION;
OFFICE OF THE DIRECTOR OF
NATIONAL INTELLIGENCE,

           Defendants.

_____/

Case No. 1:23-cv-30

Hon. Jane M. Beckering
U.S. District Judge

Hon. Sally J. Berens
U.S. Magistrate Judge

# Exhibit E



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

October 17, 2022

MR. RYAN JAMES MILLIRON
14579 TUPELO DRIVE
WEST OLIVE, MI 49460

FOIPA Request No.: 1561520-000
Subject: DANCHENKO, IGOR
(302s, 1023s, reports, and payments as a
CHS)

Dear Mr. Milliron:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the
FBI.  Below you will find check boxes and informational paragraphs about your request, as well as specific
determinations required by these statutes.   Please read each one carefully.

☑    Your request has been received at FBI Headquarters for processing.

☑    You submitted your request via the FBI's eFOIPA system.

☑    Future correspondence about your FOIPA request will be provided in an email
link unless the record file type is not supported by the eFOIPA system.

☐    Correspondence for requests regarding living individuals, or containing audio,
video, and high resolution photographs cannot be sent through the eFOIPA
system.   Future correspondence about your FOIPA request will be delivered
through standard mail.

☐    The subject of your request is currently being processed and documents subject to the
FOIPA will be released to you upon completion.

☐    Release of responsive records subject to the FOIPA will be posted to the FBI's electronic
FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is
posted.

☐    Your request for a public interest fee waiver is under consideration and you will be advised
of the decision if fees are applicable.   If your fee waiver is not granted, you will be
responsible for applicable fees per your designated requester fee category below.

☑    For the purpose of assessing any fees, we have determined:

☐    As a commercial use requester, you will be charged applicable search, review,
and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

☐    As an educational institution, noncommercial scientific institution or
representative of the news media requester, you will be charged applicable
duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

☑    As a general (all others) requester, you will be charged applicable search and
duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.fbi.gov/foia by clicking on **FOIPA Status** and entering your FOIPA Request Number.   Status updates are adjusted weekly.   The status of newly assigned requests may not be available until the next weekly update.   If the FOIPA has been closed the notice will indicate that appropriate correspondence has been mailed to the address on file.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.   Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by emailing the FBI's FOIA Public Liaison at foipaquestions@fbi.gov.   The subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.   You may also contact the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information
Dissemination Section
Information Management Division

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN MILLIRON,

               Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE;
CENTRAL INTELLIGENCE AGENCY;
FEDERAL BUREAU OF INVESTIGATION;
OFFICE OF THE DIRECTOR OF
NATIONAL INTELLIGENCE,

               Defendants.

_____/

Case No. 1:23-cv-30

Hon. Jane M. Beckering
U.S. District Judge

Hon. Sally J. Berens
U.S. Magistrate Judge

# **Exhibit F**



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

March 10, 2023

MR. RYAN JAMES MILLIRON
14579 TUPELO DRIVE
WEST OLIVE, MI 49460

FOIPA Request No.: 1561520-000
Civil Action No.: 23-cv-30
Subject: DANCHENKO, IGOR
(302s, 1023s, reports, and payments as a CHS)

Dear Mr. Milliron:

This is in response to your Freedom of Information/Privacy Acts (FOIPA) request. Please see the paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

The material you requested is exempt from disclosure pursuant to FOIA exemptions (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F) [5 U.S.C.§ 552 (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F)].

Your request specifically seeks FBI confidential informant records. Release of records responsive to your request would reveal confidential informant identities and information, expose law enforcement techniques, and endanger the life or physical safety of individuals. Therefore, your request is being closed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.   **"Part 1"** of the Addendum includes standard responses that apply to all requests.   **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals.   **"Part 3"** includes general information about FBI records that you may find useful.   Also enclosed is our Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.   Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by emailing the FBI's FOIA Public Liaison at foipaquestions@fbi.gov.   The subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.   You may also contact the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information
    Dissemination Section
Information Management Division

Enclosure

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request.   Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information.   Part 3 includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i)     **5 U.S.C. § 552(c).**   Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)].   FBI responses are limited to those records subject to the requirements of the FOIPA.   Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)     **Intelligence Records**.   To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)].   The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].   This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)     **Requests for Records about any Individual—Watch Lists.**   The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].   This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)     **Requests for Records about any Individual—Witness Security Program Records.**   The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

(iii)     **Requests for Confidential Informant Records.** The FBI can neither confirm nor deny the existence of confidential informant records pursuant to FOIA exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F) [5 U.S.C.§ 552 (b)(7)(D), (b)(7)(E), and (b)(7)(F)] and Privacy Act exemption (j)(2) [5 U.S.C.§ 552a (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records would reveal confidential informant identities and information, expose law enforcement techniques, and endanger the life or physical safety of individuals. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)     **Record Searches and Standard Search Policy.**   The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems, such as the Central Records System (CRS), or locations where responsive records would reasonably be found. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions.   The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. The standard search policy is a search for main entity records in the CRS. Unless specifically requested, a standard search does not include a search for reference entity records, administrative records of previous FOIPA requests, or civil litigation files.

        a.   *Main Entity Records* – created for individuals or non-individuals who are the subjects or the focus of an investigation
        b.   *Reference Entity Records*- created for individuals or non-individuals who are associated with a case but are not known subjects or the focus of an investigation

(ii)     **FBI Records.**   Founded in 1908, the FBI carries out a dual law enforcement and national security mission.   As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)     **Foreseeable Harm Standard.**   As amended in 2016, the Freedom of Information Act provides that a federal agency may withhold responsive records only if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates, or (2) disclosure is prohibited by law (5 United States Code, Section 552(a)(8)(A)(i)).   The FBI considers this foreseeable harm standard in the processing of its requests.

(iv)     **Requests for Criminal History Records or Rap Sheets.**   The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet.   These criminal history records are not the same as material in an investigative "FBI file."   An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.   For a fee, individuals can request a copy of their Identity History Summary Check.   Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.   Additionally, requests can be submitted electronically at www.edo.cjis.gov.   For additional information, please contact CJIS directly at (304) 625-5590.

### EXPLANATION OF EXEMPTIONS

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ