UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN MILLIRON,

       Plaintiff,                                     Hon. Sally J. Berens

v.                                                    Case No. 1:23-cv-30

U.S. DEPARTMENT OF DEFENSE, et al.,

       Defendants.
_____/

**OPINION AND ORDER**

Plaintiff Ryan Milliron initiated this action on January 9, 2023, when he filed a complaint pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (FOIA), seeking relief against the U.S. Department of Defense, the Central Intelligence Agency (CIA), the Federal Bureau of Investigation (FBI), and the Office of the Director of National Intelligence (ODNI).[1]

Now before the Court are the FBI's Motion for Partial Summary Judgment (ECF No. 37) and Milliron's Cross-Motion for Partial Summary Judgment against the FBI.[2] (ECF No. 41.) For the following reasons, the Court will **GRANT** the FBI's motion and **DENY** Milliron's motion.[3]

---

[1] The CIA was dismissed from this action on November 26, 2023. (ECF No. 36.)

[2] The parties' November 16, 2023 stipulation called for the FBI and the ODNI to file a motion for partial summary judgment, for Milliron to file a response, and for the FBI and the ODNI to file a reply. (ECF No. 33.) Because the ODNI is still conducting a search for the requested records, that FOIA request has been omitted from the instant motion. (ECF No. 38 at PageID.196 n.4.) Although the stipulation did not contemplate Milliron filing a motion, the Court will treat his filing as both a motion and his response to the FBI's motion.

[3] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the Court conduct all further proceedings in this case, including entry of judgment.

## I. Background

The present motions concern two FOIA requests that Milliron submitted to the FBI. On August 28, 2022, Milliron submitted a FOIA request stating, "Manos Antonakakis and David Dagon, both individuals implicated in fraudulent data alleging a secret Alfa Bank communications channel, have both made public statements indicating their involvement in attribution for the DNC hack." (ECF No. 38-1 at PageID.243.) He requested "any reports, emails, memorandums, or letters in the FBI's possession relating to the hack of the DNC or Guccifer 2.0 that were provided by David Dagon or Manos Antonakakis."[4] (*Id.*) The FBI acknowledged receipt of this request by letter dated September 6, 2022, in which it informed Milliron that his request had been assigned Request No. 155874-000. (*Id.* at PageID.216.) Milliron filed the instant action on January 9, 2023, before receiving a response from the FBI. The FBI denied Milliron's request on October 3, 2023, by issuing a *Glomar* response neither confirming nor denying the existence of the requested records pursuant to FOIA Exemptions 6 and 7(C) because Milliron's request involved third parties, and the mere acknowledgement of the existence of such records could reasonably be expected to constitute an unwarranted invasion of the individuals' privacy.[5] (*Id.* at PageID.217, 248.)

On September 17, 2022, Milliron submitted a FOIA request to the FBI requesting "any referrals, 302's, 1023's, or other reports documenting information obtained from Igor Danchenko as a confidential human source for the FBI," as well as "any documentation over payments made

---

[4] Guccifer 2.0 was an online name under which twelve Russian nationals identified by the Department of Justice disseminated documents obtained through hacks of computer networks maintained by the Democratic Congressional Campaign Committee, the Democratic National Committee, and the presidential campaign of Hillary Clinton. (ECF No. 38-1 at PageID.218.)

[5] A *Glomar* response "is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). In other words, an agency may issue such response if the existence or nonexistence of the requested records would cause the harm sought to be prevented by the exemption. *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).

2

to Igor Danchenko as a CHS." (*Id.* at PageID.221, 254.) The FBI acknowledged receipt of this request in an October 17, 2022 letter notifying Milliron that his request had been assigned Request No. 1561520-000. (*Id.* at PageID.221–22.) On March 10, 2023, the FBI notified Milliron that the records he requested are exempt from disclosure under Exemptions 6 and 7(C)–(F) because the materials responsive to his request were confidential informant (CI) records that would reveal CI identities and information, expose law enforcement techniques, and endanger the life or physical safety of individuals. (*Id.* at PageID.222, 259.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The summary judgment procedure is generally appropriate to resolve disputes regarding FOIA exemptions because they present "purely legal questions." *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012). "In FOIA cases, including those where a *Glomar* response is issued, summary judgment may be based solely on information provided in the agency's supporting declarations." *Smith v. CIA*, 393 F. Supp. 3d 72, 78 (D.D.C. 2019). "[C]ourts may rely on non-conclusory agency

affidavits demonstrating the basis for withholding if they are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith."[6] *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021)). Such affidavits are entitled to a presumption of good faith absent evidence to the contrary." *Rimmer*, 700 F.3d at 255 (citing *Jones v. FBI*, 41 F.3d 238, 242–43 (6th Cir. 1994)).

### III. Discussion

FOIA provides that an agency must, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, . . . make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). FOIA embodies "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Department of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quotation marks omitted). An agency may withhold or redact information that falls within one of the nine statutory exemptions. 5 U.S.C. § 552(b); *see Cincinnati Enquirer v. Dep't of Just.*, 45 F.4th 929, 932 (6th Cir. 2022). In accordance with the Act's policy of full disclosure, the exemptions must be "narrowly construed." *Rimmer*, 700 F.3d at 255 (citing *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). The agency bears the burden "to justify the withholding of any requested documents." *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). A court

---

[6] A court may determine whether the agency has complied with its FOIA obligations by considering a "*Vaughn* index," which may take the form of an affidavit or declaration describing the documents responsive to the request and indicating in sufficient detail the reasons for redactions or withholding of documents to allow the court to make an independent and informed assessment of the asserted exemption's application. *See Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 544 (6th Cir. 2001). In the Sixth Circuit, "no precise form is dictated for [*Vaughn*] affidavits; any form is acceptable which 'enables the court to make a reasoned, independent assessment of the claim[s] of exemption.'" *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994) (quoting *Vaughn v. United States*, 936 F.2d 862, 866–67 (6th Cir. 1991) (alteration in original)).

4

reviews the agency's invocation of an exemption *de novo*. 5 U.S.C. § 552(a)(4)(B). "If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position." *Rugiero*, 257 F.3d at 544 (quoting *Ingle v. Dep't of Just.*, 698 F.2d 259, 265 (6th Cir. 1983)).

      A.      **Request No. 1558747-000**

At issue regarding this request are FOIA Exemptions 6 and 7(C). Exemption 6, 5 U.S.C. § 552(b)(6), exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Exception 7(C), 5 U.S.C. § 552(b)(7)(C), exempts "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . ." The Sixth Circuit has observed that for documents that meet the "law enforcement purposes" threshold, the range of information that may be withheld under Exemption 7(C) is broader than the information that may be withheld under Exemption 6. *Rimmer*, 700 F.3d at 256; *see also United States Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989) (noting that "the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files"). Thus, where both exemptions are asserted as to the same documents, it is appropriate to consider them together "under the more protective terms of 7(C)." *Rimmer*, 700 F.3d at 256.

There is no dispute that the records Milliron seeks were compiled for law enforcement purposes. (ECF No. 38-1 at PageID.217–18.) It is therefore appropriate to limit the analysis to whether the records were properly withheld under Exemption 7(C). In considering this exemption,

a court must "balance the public interest in disclosure against the privacy interest Congress intended Exception 7(C) to protect." *Detroit Free Press, Inc. v. U.S. Dep't of Just.*, 829 F.3d 478, 481 (6th Cir. 2016 (en banc) (quoting *Reporters Comm.*, 489 U.S. at 776) (brackets omitted). "This balancing test is straightforward: If the privacy interest is greater than the public interest, the documents are exempt from disclosure. But if the public interest outweighs the privacy interest, Exemption 7(C) does not apply." *Cincinnati Enquirer*, 45 F.4th at 933.

### 1. Privacy Interest

The privacy interests covered by Exemption 7(C) extend not only to individuals subject to criminal investigations, but also to "third parties mentioned in the documents, such as witnesses, informants, and investigators." *Id.* (internal quotation marks omitted); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (noting that "persons involved in FBI investigations—even if they are not the subject of the investigation—have a substantial interest in seeing that their participation remains secret") (internal quotation marks and citation omitted). An individual retains his or her privacy interest under FOIA even if some of the information already exists in the public sphere. *Id.* (citing *Reporters Comm.*, 489 U.S. at 764–65); *see also Abraham & Rose, PLC v. U.S.*, 138 F.3d 1075, 1083 (6th Cir. 1998) (noting that "a clear privacy interest exists with respect to such information as names, addresses, and other identifying information even if such information is already available on publicly recorded filings" (footnote omitted)). This remains true even if other government agencies have acknowledged the information subject to the exemption. *See People for the Ethical Treatment of Animals v. National Insts. of Health & Hum. Servs.*, 745 F.3d 535, 542 (D.C. Cir. 2014) (holding that privacy interests asserted under Exemption 7(C) remained intact even though other agencies had publicly acknowledged complaints against animal researchers).

6

Milliron does not dispute that Antonakakis and Dagon would have a clear privacy interest for purposes of Exemption 7(C). He argues, however, that any such interests "have in effect, been waived." (ECF No. 41 at PageID.275.) As an initial matter, Milliron does not expressly argue, nor has he shown, that the FBI itself waived its right to assert a *Glomar* response. To do so, he would have to show that the FBI "officially acknowledged otherwise exempt information through prior disclosure." *American Civil Liberties Union v. CIA*, 710 F.3d 422, 426–27 (D.C. Cir. 2013). "An agency's official acknowledgment of information by prior disclosure . . . cannot be based on mere public speculation, no matter how widespread." *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007). Rather, a waiver through prior acknowledgement occurs only when the requested information is as specific as, and matches, the information previously released and was made public through an official and documented disclosure. *Id.* (quoting *Fitzgibbon*, 911 F.2d at 765). Milliron fails to cite a public acknowledgment by an FBI official meeting these requirements.

Milliron contends, instead, that Antonakakis and Dagon waived their privacy interests through their own communications acknowledging that they performed attribution work for the FBI. As support, he cites a July 26, 2021 email from Antonakakis to his colleagues at the Georgia Institute of Technology (Georgia Tech), a July 24, 2021 email from Dagon's attorney to a Georgia assistant attorney general concerning Georgia Tech's response to a subpoena, and a September 28, 2020 letter from Dagon's attorney to Georgia Tech's legal department regarding payment of Dagon's legal fees in connection with the grand jury investigation conducted by Department of Justice Special Counsel John H. Durham. (ECF Nos. 41 at PageID.275; 41-2–4.) Milliron does not indicate how he came to possess these documents, but he contends that the information shared in them is comparable to the information the third-party made public in *Lindsey v. FBI*, 271 F. Supp.

7

3d 1 (D.D.C. 2017), which the court found significantly diminished the third-party's privacy interest.

But the circumstances here are substantially different from those in *Lindsey*, where the third-party had acknowledged in a CNN video interview his contacts with U.S. Officials concerning his diplomatic efforts with Iraq, and in a *New York Times* article had acknowledged being detained by the FBI at Dulles Airport. *Id.* at *8. Likewise, the D.C. Circuit cases *Lindsey* cited, *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082 (D.C. Cir. 2014), and *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995), both involved public statements by the third-parties concerning information sought in the FOIA requests. *See Citizens for Responsibility*, 746 F.3d at 1091–92 (discussing former Representative Tom DeLay's "well-publicized announcement" that he had been the subject of an FBI investigation); *Nation Magazine*, 71 F.3d at 896 (noting public statements by former presidential candidate Ross Perot concerning his offer to assist the government in hostage rescue and drug interdiction operations). Contrary to these cases, Milliron has presented no evidence of similar public statements by either Antonakakis or Dagon. Rather, the materials he presents are private communications evincing no intent to that they be made public. *See Carpenter v. U.S. Dep't of Just.*, 470 F.3d 434, 439–40 (1st Cir. 2006) (third-party's attachment of letter from congressman to his motion to quash a subpoena filed in a separate administrative proceeding demonstrated no intent to waive his privacy interest because the release was "limited" in scope).

The documents Milliron offers also fail to demonstrate waiver by Antonakakis or Dagon because they do not confirm what Milliron alleges or seeks in his FOIA request—that Antonakakis and/or Dagon provided information to the FBI relating to the hack of the DNC or Guccifer 2.0. That is, nothing in the emails or the letters directly confirms that these individuals provided

8

attribution work or research to the FBI regarding these issues. While the letter from Dagon's counsel does reference the FBI in connection with queries submitted through DARPA (Defense Advanced Research Projects Agency), the queries pertained to "Russian Communications between Alfa Bank and the Trump organization and Mr. Trump's use of a Russian Yota phone," (ECF No. 41-4 at PageID.304), rather the hack of the DNC and Guccifer 2.0—the subject of Milliron's FOIA request. Accordingly, Milliron fails to demonstrate that Antonakakis and/or Dagon waived their privacy interests or have diminished privacy interests resulting from any public acknowledgement.

### 2.     Public Interest

While the agency bears the burden of demonstrating that an exemption applies, the requestor bears the burden of demonstrating "a weightier public interest in favor of disclosure." *Cincinnati Enquirer*, 45 F.4th at 934 (citing *National Archives & Rec. Admin. v. Favish*, 541 U.S. 157, 172 (2004)); *see also Hohman v. IRS*, No. 16-CV-13282, 2017 WL 6884334, at *7 (E.D. Mich. Dec. 18, 2017), *report and recommendation adopted*, 2018 WL 274339882 (E.D. Mich. Jan. 8, 2018) (noting that once a privacy interest is identified, "the burden shifts to Plaintiff to show that there is a 'significant countervailing public benefit' in releasing the information that outweighs the privacy concerns" of the third-party (citing *Rimmer*, 700 F.3d at 257)). The existence of a significant public interest "depends on 'the extent to which disclosure would serve the "core purpose of the FOIA," which is "contribut[ing] significantly to public understanding *of the operations or activities of the government*."'" *Detroit Free Press*, 829 F.3d at 485 (quoting *United States Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994)); *see also Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) ("It is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on "the citizens' right to be informed about 'what their government is up to.'" ((quoting *Reporters Comm.*, 489 U.S. at 773)). The Supreme Court has held that the requestor must establish the following:

> First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted.

*Favish*, 541 U.S. at 172.

Milliron fails to establish a significant public interest that outweighs the established privacy interests. Milliron asserts that disclosure of the requested documents would expose government "corruption and misconduct," "allow [the public] to ask questions and scrutinize the decisions of government officials," and "advance the public's understanding of what happened and create pointed questions to the [DOJ] on their conduct in the underlying investigation into the DNC hack." (ECF No. 41 at PageID.266, 274, 279.) First, as to his assertion of corruption and misconduct, the Supreme Court has held that the plaintiff must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. A "bare suspicion" is insufficient. *Id.* Moreover, when "governmental misconduct is alleged as the justification for disclosure, the public interest is insubstantial unless the requester puts forward compelling evidence that the agency denying the FOIA request is engaged in illegal activity and shows that the information sought is necessary in order to confirm or refute that evidence." *McCutchen v. U.S. Dep't of Health & Human Servs.*, 30 F.3d 183, 189 (D.C. Cir. 1994). Milliron provides no such evidence in support of his assertion of corruption and misconduct.

Even if Milliron could establish a significant public interest that might outweigh the privacy interests at issue, he fails to show that the information he seeks will advance that interest. That is, Milliron fails to articulate sufficiently how records concerning information Antonakakis and Dagon provided to the FBI will shed light on misconduct by the FBI or its mishandling of the investigation into the DNC hack. The Sixth Circuit and other courts have recognized that a

challenge to Exemption 7(C) withholding is properly denied where the disputed records would not, themselves, reveal agency misconduct. *See Cincinnati Enquirer*, 45 F. 4th at 937 (finding that the public's interest in documents concerning investigation into state attorney's interference with a drug investigation was minimal as they disclosed nothing about the U.S. Attorney's decision-making process); *Rimmer*, 700 F.3d at 259 (exposure of redacted information would not advance the public interest because it would not help the public discern whether the FBI was acting corruptly); *Carpenter*, 470 F.3d at 441 ("To the extent Carpenter is seeking to obtain the documents that Koresko provided to the government, no public interest is served because reviewing such documents tells the public nothing about the actions of the government."); *Mezerhane de Schnapp v. U.S. Citizenship & Immigration*, 67 F. Supp. 3d 95, 104 (D.D.C. 2014) (agency properly invoked Exemption 7(C), in part, because the names of persons who appeared in law enforcement background check searches in connection with the plaintiff's asylum application would not provide "any answers about possible agency misconduct"). Here, Milliron's request, which seeks documents containing information provided by Antonakakis and Dagon (ECF No. 38-1 at PageID.243), would reveal little, if any, information about the FBI's handling of the investigation into the DNC hack, its substantive law enforcement policy, or agency misconduct or corruption.

### 3. Balancing the Interests

As set forth above, Antonakakis and Dagon both have significant privacy interests in any document connecting them to an FBI investigation. On the other hand, the public's interest in disclosure of the documents is, at best, minimal. The Court thus concludes that Antonakakis's and Dagon's privacy interests outweigh any interest the public may have in disclosure of the requested documents. Accordingly, the FBI's *Glomar* response properly invoked Exemptions 6 and 7(C).

### B.     Request No. 1561520-000

The Court first considers the adequacy of the FBI's search for documents responsive to this request. In support of its motion, the FBI has submitted a declaration by Michael G. Seidel, the Section Chief of the FBI's Record/information Dissemination Section (RIDS), explaining the FBI's efforts to search for documents responsive to Milliron's request. Seidel explained that the FBI, via RIDS, searched the FBI's Central Record System using search terms "Igor Danchenko" and "Danchenko, Igor," which yielded no responsive records. (ECF No. 38-1 at PageID.226–27.) The FBI then conducted a targeted search of its Confidential Human Source (CHS) database, Delta, which located documents that were responsive to the request. (*Id.* at PageID.227–28.) Milliron does not challenge the adequacy of the search and, based on the information set forth in Seidel's declaration, the Court concludes that the FBI's search was reasonable.

The FBI withheld the documents pertaining to Danchenko under Exemptions 7(D)–(F), each of which requires that the documents be "compiled for law enforcement purposes." 5 U.S.C. § 522(b)(7). As with the records pertaining to Antonakakis and Dagon discussed above, there is no dispute that the records pertaining to Danchenko located in the CHS database were compiled or created for law enforcement purposes. (ECF No. 38-1 at PageID.228–29.)

#### 1.     Exemption 7(D)

Exemption 7(D) exempts from disclosure documents that:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 522(b)(7)D). In contrast to Exemption 7(C), Exemption 7(D) is not subject to balancing of competing interests; "if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure." *Jones*, 41 F.3d at 247.

In considering the application of this exemption, "the question is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." *United States Dep't of Just. v. Landano*, 508 U.S. 165, 172 (1993) (italics in original). Exemption 7(D) applies "if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes." *Id.* at 174. A source is considered confidential if the source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Id.* at 172 (internal quotation marks and citation omitted). Exemption 7(D) applies even if the "'confidential source is later revealed, . . . so long as the informant and the agency intended the identity of the source to remain undisclosed at the time the agency compiled the information.'" *Rimmer*, 700 F.3d at 261 (quoting *Rugiero*, 257 F.3d at 551). Moreover, the agency's subsequent public acknowledgement of a confidential source's identity does not waive the exemption's protection of the information acquired from the source. *See Kuzma v. U.S. Dep't of Just.*, 692 F. App'x 30, 36 (2d Cir. 2017) ("[W]e have 'reject[ed] the idea that subsequent disclosures of the identity of a confidential source or of some of the information provided by a confidential source requires full disclosure of information provided by such a source.'" (quoting *Ferguson v. FBI*, 957 F.2d 1059, 1068 (2d Cir. 1992)); *Cobar v. U.S. Dep't of Just.*, 81 F. Supp. 3d 64, 72 (D.D.C. 2015) (rejecting as "clearly wrong" the notion "that public knowledge of a

confidential source's identity precludes application of 7(D) to protect information provided by that source").

In support of this exemption, Seidel states that disclosure of documents responsive to Milliron's request would reveal information that Danchenko provided "under an express assurance of confidentiality." (ECF No. 38-1 at PageID.230.) Seidel further asserts that, although the FBI has publicly acknowledged Danchenko as a confidential source, it has not acknowledged the extent of his cooperation or the confidential information he provided to the FBI. (*Id.*)

Based on the information set forth in the Seidel declaration, the Court concludes that the FBI has met its burden of demonstrating that the responsive materials are protected under Exemption 7(D). Although Milliron suggests that the FBI acted in bad faith in connection with its assertion of the exemption (ECF No. 41 at PageID.280), he fails to present sufficient evidence to overcome the presumption of good faith in invoking the exemption. *Rimmer*, 700 F.3d at 255. Apart from his unsupported assertion of bad faith, Milliron also contends—apparently to support disclosure of the requested information—that in July 2020, the Senate Judiciary Committee released a 302 transcript of a Danchenko interview.[7] (*Id.* at PageID.274.) Contrary to Milliron's assertion, the document is not an FBI 302 interview form. Moreover, the identity of the source is redacted throughout the document, and there is no indication that the individual was interviewed as a confidential source for the FBI. Consequently, there is no indication that the information set forth in the transcript is the same as the information the FBI withheld.[8] *See Parker v. Dep't of*

---

[7] The Court was unable to access this document using the link Milliron provided in footnote 24 of his brief, but was able to do so by searching the Judiciary Committee's document page at https://www.judiciary.senate.gov/committee-activity/library (last visited August 1, 2024).

[8] Milliron also cites testimony from FBI Supervisory Intelligence Analyst Brian Auten in *United States v. Danchenko*, 1:21-cr-45 (E.D. Va), but the context of the interviews of Danchenko that Auten mentioned in his testimony is unclear.

*Just.*, 934 F.2d 375, 378 (D.C. Cir. 1991). Accordingly, the Court concludes that documents were properly withheld under Exemption 7(D).

### 2. Exemption 7(E)

Exemption 7(E) exempts documents that:

would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). As with Exemption 7(D), such materials are categorically exempt from disclosure. *See Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997) (citing *Fisher v. U.S. Dep't of Just.*, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991)). An agency seeking to withhold documents under this exemption must "provide[] the Court with information sufficient for it to decide whether the material is properly withheld under Exemption 7(E)." *Id.* However, "[b]ecause revelation of internal law enforcement operations could aid future criminal activity, 'Exemption 7(E) sets a relatively low bar for the agency to justify withholding.'" *Hamad v. Mayorkas*, No. 3:20-cv-476, 2022 WL 3081971, at *3 (S.D. Ohio Aug. 3, 2022) (citing *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)).

Seidel sets forth in his declaration a reasonably detailed explanation of how disclosure of the responsive documents would undermine the FBI's Confidential Human Source (CHS) program, which allows "the FBI to leverage Human Intelligence to obtain investigative leads to progress FBI cases." (ECF No. 38-1 at PageID.232.) Seidel asserts that because the responsive documents are records specially compiled in connection with the CHS program, disclosure would reveal information about the CHS program that is not publicly known, such as how the FBI determines which individuals to recruit based on the types of information it seeks to gather in a particular case. (*Id.*) In particular, the records would disclose, among other things, "who, why, and

15

where it seeks to recruit particular individuals as FBI informants," its methods for covertly communicating with informants, how it vets its sources for reporting reliability, and details about payments to its sources. (*Id.* at PageID.233.) Seidel asserts that disclosure of such information would enable criminals "to avoid FBI CHSs, or potentially seek out and retaliate against these sources in the interest of evading the FBI's detection," which would ultimately harm the CHS program. (*Id.*) Based on this information, the Court concludes that the FBI has met its burden of demonstrating that the records were properly withheld under Exemption 7(E).

### 3. Exemption 7(F)

An agency may withhold records or information under this exemption that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). This exemption also contains no balancing test. *See Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002). The reach of this exemption is "expansive," as it applies to "any individual." *Electronic Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 526 (D.C. Cir. 2015). In addition, "[d]isclosure need not *definitely* endanger life or physical safety; a reasonable expectation of endangerment suffices." *Public Emps. for Envt'l Resp. v. U.S. Section, Int'l Boundary and Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014). In applying this exemption, a court considers whether the agency has demonstrated "the requisite nexus between disclosure and possible harm" to an individual. *Albuquerque Pub. Co. v. U.S. Dep't of Just.*, 726 F. Supp. 851, 858 (D.D.C. 1989).

The FBI determined that Exemption 7(F) applies because, although it has acknowledged Danchenko as a confidential source, the scope of the information he provided has not been made public. (ECF No. 38-1 at PageID.234.) It asserts that disclosure of the information Danchenko provided could reasonably be expected to endanger his life because the information he provided was likely derogatory and/or incriminating to individuals who may be involved in criminal

16

activities. (*Id.*) The FBI further asserts that if this information were disclosed, it is likely, particularly given Danchenko's "high-profile, extremely public nature," that the individuals about whom Danchenko reported would retaliate against him with violence. (*Id.*)

Unlike Exemptions 7(D) and (E), the Court finds that the FBI has provided insufficient information to justify application of this Exemption. Danchenko's status as an FBI informant is well known to the public, as is his involvement as the primary source of information for the largely-discredited Steele dossier that played a part in the FBI's Trump-Russia probe. Given these well-known facts, Seidel's conclusory assertion in his declaration that disclosure of derogatory and/or incriminating information that Danchenko provided to the FBI would likely subject him to violence by individuals engaged in criminal activities, without more specifics, is insufficient to demonstrate a reasonable expectation that disclosure of the subject documents would endanger Danchenko's safety. *See Sluss v. U.S. Dep't of Just.*, No. 1:17-cv-00064, 2019 WL 2493447, at *7 (D.D.C. June 14, 2019) ("The court will accord deference to the agency's assessment of danger, but only when it supplies facts to support it."). Nonetheless, in light of its conclusion that the agency properly invoked Exemptions 7(D) and (E), the Court finds that it has demonstrated that it properly withheld the documents pertaining to Danchenko.

### 4. Propriety of Categorical Withholding

As a final matter, the Court concludes that the FBI has demonstrated that withholding by category of documents is proper in this instance. An agency need not justify its withholdings document-by-document, but instead may identify documents by category that it seeks to withhold. *See Vaughn v. United States*, 936 F.2d 862, 868 (6th Cir. 1991) (quoting *North v. Walsh*, 881 F.2d 1088, 1097 n.13 (D.C. Cir. 1989)). However, if the agency seeks to rely on categorical withholdings, "its definitions of relevant categories must be sufficiently distinct to allow a court

to determine, as to each category, whether the specific claimed exemption(s) are properly applied." *Id.*

The Court finds that the Seidel declaration fairly describes the content of the material withheld and adequately describes the categories into which it falls to enable the Court to determine whether the grounds asserted for withholding the documents were reasonable and consistent with the law pertaining to the asserted exemptions. Seidel states that the investigative file contains two broad categories of documents, CHS reporting documents that contain information a CHS reports to the FBI, and electronic communications, which provide the primary means of correspondence within the FBI. (ECF No. 38-1 at PageID.235.) The Seidel declaration further states that the FBI has determined that, based on its review of the records, it cannot provide or disclose specific information related to the responsive records without disclosing information provided by a confidential source or that would potentially jeopardize the CHS program. (*Id.* at PageID.236.) The FBI further separated the information within each document into two additional categories, Evidentiary/Investigative Materials and Administrative Materials, which contain information that could disrupt the FBI's CHS program, including future investigations and prosecutions, by revealing information provided by Danchenko and the extent of his cooperation with the FBI and/or techniques and investigative methods used to compile or solicit information from such individuals. (*Id.* at PageID.237–39.) Based on this information, the Court concludes that the FBI has demonstrated proper grounds for categorical withholdings under Exemptions 7(D) and (E).

## IV. Conclusion

For the foregoing reasons, the Court will **grant** the FBI's motion for partial summary judgment and **deny** Milliron's cross-motion for partial summary judgment.

Accordingly, in accordance with the foregoing opinion,

**IT IS HEREBY ORDERED** that Defendant FBI's Motion for Partial Summary Judgment (ECF No. 37) is **GRANTED** and Plaintiff's Cross-Motion for Partial Summary Judgment (ECF No. 41) is **DENIED**.

Dated: August 13, 2024                              /s/ Sally J. Berens
                                                                    SALLY J. BERENS
                                                                    U.S. Magistrate Judge